EX PARTE MARGARET R. FERNBAUGH, RELATOR, v. DeMORSE W. CLARK, RESPONDENT.—163 S. W. (2d) 999.

Kansas City Court of Appeals. June 15, 1942.

Rehearing Stricken July 6, 1942.

*C. W. Prince* and *John C. Grover* for respondent.

*Johnson & Garnett* for petitioner.

BOYER, C.—This is a proceeding in *habeas corpus* instituted by petitioner to obtain the custody of her child said to be unlawfully detained by respondent. Following the issuance of a writ to respondent on September 25, 1941, the return of respondent to said writ and the answer of petitioner to the return were duly filed. Thereafter, by agreement of the parties and to expedite the hearing upon the issues raised, the court appointed a special commissioner to receive and preserve the evidence upon the issues joined and to cause it to be returned to the court with findings of fact and conclusions of law thereon. The commissioner has returned the evidence so received by him to the court, together with his report containing his findings of fact and conclusions of law. His report was adverse to the claims of respondent who has filed exceptions thereto. The case is now before the court for disposition upon respondent's exceptions and upon the record.

The following preliminary statement of facts admitted, conceded or uncontroverted may serve as introductory to a more detailed statement of the evidence relative to points raised by counsel in their briefs. Prior to December 16, 1936, petitioner and respondent were husband and wife but on said date the respondent, upon his petition and upon default of his wife, obtained a divorce. Their infant daughter, Carol

Clark, was then six years of age. The father did not request custody of the child, but did request that the court fix the proper amount of money which he should pay for the support and maintenance of his daughter; that he be afforded the privilege of visitation; and for such other orders as to the court may seem proper. The decree of divorce awarded care and custody of the child to the mother and directed that she be allowed the sum of $5 per week for its support, and that plaintiff have the privilege of visiting the child at reasonable times and have its custody during two weeks of the summer vacation. Both parties remarried, and the petitioner (mother of the child) is now Margaret R. Fernbaugh. The child and her mother, with her new husband, resided in Louisiana.

Some time in July, 1940, the father obtained possession of the child and brought it to his home in Kansas City and failed to return the child to its mother after the time of his authorized period of custody, whereupon a series of court processes and proceedings were instituted, including an execution to obtain custody of the child; a motion on behalf of the father to quash execution and to modify the decree; and the petition of the mother for a writ of *habeas corpus*, all of which were withdrawn or dismissed by stipulation of the parties; and upon a further agreed plan in reference to the custody, care and maintenance of the child to be recommended to the court as the basis of a judgment modifying the previous order relating to the child's custody. On presentation of the recommended plan of modification to the judge of the court, who had tried the divorce case, the court found that the parties had agreed that the provisions of the divorce decree should be modified with respect to the care, custody and control of the child so that the defendant (mother) should have and exercise the care, custody and control of said child at her home in the State of Louisiana during all of each school year, and that plaintiff (father) should have the privilege of visiting with said child at any and all reasonable times and should have the custody of said child during the summer and Christmas vacation periods of school in each year at his home in Missouri, provided that he should return the child to its mother in Louisiana at least one week before the end of each summer vacation period in time for preparation to enter school, and in time to resume her school work after the Christmas vacation. An allowance of $5 per week for the support of the child during the periods of custody by the mother was made. The court found that it was to the best interest of the child to modify the decree in accordance with the stipulation of the parties and so ordered. The modifying decree also provided that at the beginning of each summer vacation of the custodial period of the father, the child should be presented to the court for examination and hearing as to her health, welfare and happiness to the end of further orders if changed conditions would justify such orders. In addition to the foregoing the decree also awarded an allowance of attorneys' fees to the attorneys of the mother in the sum of

$150, to be paid in installments of $50 on the date of the decree and $5 per month thereafter until fully paid: The date of this decree was September 30, 1940.

The mother immediately took the child to her home in Louisiana. The child was not returned to its father during the following Christmas holidays, nor at the close of the school session in June, 1941. On July 11, 1941, the father took physical possession of the child where he found her in Louisiana and brought her to Kansas City, where he has ever since retained custody of his daughter.

The petitioner here was not represented by counsel in the original divorce case, but was represented by counsel after respondent obtained possession of the child and failed to return it to her, and in all matters leading up to and concluding with the modifying decree under date of September 30, 1940. Mr. Garnett, of the firm of Johnson, Garnett and Quinn, of Kansas City, was her active counsel and attorney up to that time.

On August 13, 1941, respondent through his counsel caused to be delivered at the office of Mr. Garnett a copy of his motion to modify the decree of September 30, 1940, in reference to the custody of the child by enlarging the custodial privileges of the father and curtailing those of the mother, and enjoining and restraining her from removing the child from the jurisdiction of the court, and for such other relief as the interest of the child required. The motion so served was accompanied by notice that it would be called up for hearing on the 15th day of August, 1941. Upon learning of what had been done, Mr. Garnett promptly returned these papers to the office of respondent's counsel and left word with the secretary in charge that he had not been employed in the new modification proceeding and had no authority to accept service for Mrs. Fernbaugh or to appear for her. The papers were returned to him the same day, August 14. He also wrote and delivered a letter at the office of Judge WALTNER, of the Independence Division of the Circuit Court of Jackson County, Missouri, where all the previous divorce proceedings had been held, notifying him that he did not represent Mrs. Fernbaugh and had no authority to appear for her. There is evidence that Judge WALTNER had previously called Mr. Garnett by telephone in reference to an informal inquiry, as the previous decree had provided, and on the day that the child was produced, and that Mr. Garnett had then explained to the judge by telephone that he had not been re-employed by Mrs. Fernbaugh and had no authority to appear for her. From the time that the motion to modify was served upon Mr. Garnett until September 1, 1941, there were various communications between him, Mrs. Fernbaugh, her father, and her attorney in Louisiana, but he received no express authority from her to act in her behalf in connection with the new proceeding until the date last named.

It appears that the motion to modify was not presented to or heard by Judge WALTNER on the 15th day of August, but was heard by

another sitting as a special judge on August 22, 1941. On that day the special judge directed the clerk of the court to call Mr. Garnett and and advise him that the motion was up for hearing. Mr. Garnett advised the clerk that he had written to Louisiana and also to Judge WALTNER, but that he had had no reply, and that he didn't have anything to do with the case. The clerk testified that he reported this information to the judge. Nevertheless, the court proceeded with the hearing of respondent's motion to modify the previous order of September 30, 1940, with respect to the care, custody and maintenance of the child and proceeded to order and adjudge that said previous order be modified and that the minor child be not removed from the jurisdiction of the court but remain in the custody of plaintiff (father) during the entire time, subject to the right of the defendant (mother) to visit said child at such reasonable times and under such reasonable conditions "as the court hereafter shall, upon petition, order and adjudge," and all that part of the previous order granting custody to the mother and providing payments for the support of the child was vacated; and it was further ordered that the defendant (mother) and her agents and representatives, as well as plaintiff (father), were enjoined from removing the child from the jurisdiction of the court.

The validity or invalidity of that order is the crucial question in the case. Respondent claims custody by virtue of that order. The petitioner contends that the hearing was held and the order made without legal notice to her; that Mr. Garnett was not her attorney at the time and that service of notice on him was not binding upon her; and that said order was illegal and wholly void. Upon this question the commissioner, upon review of the facts found by him and upon the law applicable to the facts, found that the service on Mr. Garnett was insufficient to give the circuit court jurisdiction over the person of petitioner in the modification proceedings begun in August, 1941, and concluded that said order is void and should be held for naught for want of proper legal notice to the petitioner herein of the motion and of the hearing thereon. As a result of such finding the commissioner further concluded that the legal custody of the child is fixed by the decree of the court dated September 30, 1940, until the same is legally modified; that respondent holds custody of the child without authority of law; and that the child should be delivered to the custody of petitioner under the terms of the decree of September 30, 1940.

The respondent filed ten exceptions to the findings and conclusions of the commissioner. The first six exceptions all pertain to the alleged error of the commissioner in his finding and conclusion that the order dated August 22, 1941, was void for want of proper and legal notice to the petitioner, and the finding and conclusion that Mr. Garnett was not the authorized attorney of petitioner at the time service of the motion and notice was made on him, and that service upon him was not good service on the petitioner. The remaining exceptions may

be summarized as charging error in the findings and ruling of the commissioner that certain proceedings by the petitioner subsequent to the issuance of the order of August 22, 1941, did not place the parties and the subject-matter within the exclusive jurisdiction of the circuit court for disposition of the issue as to the validity of said order, and that petitioner was entitled to pursue her remedy by *habeas corpus*. All the exceptions are treated under two principal points in respondent's brief. The first principal point states: "The judgment of the Circuit Court of Jackson County, Missouri, Independence Division, entered August 22, 1941, was a valid and binding judgment." Various subdivisions follow. The second main point says: "The court first acquiring jurisdiction of the subject-matter retains exclusive jurisdiction, subject only to the right of appeal." There are two subdivisions under this point.

As a prelude to the main points respondent proposes that the report of the special commissioner on the facts and law is not binding on this court. That proposition is recognized, as well as the duty of the court to examine the record and to make other and different findings and conclusions if the facts and the law so require. With this in view, the entire record has been carefully read with the particular purpose of ascertaining the weight of the competent evidence upon issues of fact and the law that should apply to the facts.

Starting with the premise that the judgment of August 22, 1941, was a valid and binding judgment respondent contends that the judgment of a court of competent jurisdiction is binding until it is reversed, and another court cannot by means of a writ of *habeas corpus* look beyond a judgment and re-examine the proceedings upon which it is based. Reliance is placed upon certain provisions of the *habeas corpus* act and certain pronouncements in the case of State ex rel. v. Alford, 343 Mo. 576, 122 S. W. (2d) 906. The rule contended for is announced in the case cited as the general rule which "applies only to parties and privies to such judgment." Having in view only the provisions of Sections 1621 and 1624, Revised Statutes of Missouri 1939, the court said:

"Those sections provide that the legality of the judgment of another court cannot be inquired into in a *habeas corpus* action. In the instant case if the purported adoption judgment was rendered without the written consent of the mother and without actual or constructive service on her, it would not be a judgment and its legality as such could not arise."

The effect of the holding is that where a mother of a child brought a *habeas corpus* proceeding for its custody, she could attack collaterally a judgment of adoption which was rendered without her consent and without actual or constructive notice to her.

The question of the validity of the so-called judgment of August 22, 1941, changing custody of the child, raises an inquiry as to lawful jurisdiction, or the exercise of an excess of jurisdiction, by the court

in rendering said judgment. The previous decree of September 30, 1940, vested in the mother the custody of her child subject only to the conditions contained in said decree. It must be accepted as fundamental that her rights and privileges under said decree could not be disturbed without legal notice to her and the privilege of a hearing. The annulment of such decree and the entrance of another depriving her of custody without proper notice would be a denial of due process, and said decree would not be a judgment at all, and its efficacy in affecting the right of custody may be determined by this court in a *habeas corpus* proceeding. [Ex Parte Jack v. Jack, 295 Mo. 128, 243 S. W. 314; Tomlinson v. French Institute, 232 Mo. App. 597, 109 S. W. (2d) 73.] A distinction is clearly drawn between judgments which are lawfully rendered, with competent jurisdiction, and judgments which are the result of an excess of jurisdiction. In the latter case the legality of the judgment may be collaterally attacked in a proceeding of this character.

A motion to modify a decree of divorce insofar as it affects the custody of a child is in the nature of an independent proceeding and the motion is treated as a petition in an original action. [North v. North (Mo.), 100 S. W. (2d) 582, 587; Tossier v. Tossier (Mo. App.), 33 S. W. (2d) 995.] It is not denied, but in effect conceded, that in such a proceeding due notice to the petitioner is required. It is claimed by respondent that service of notice upon Mr. Garnett of the motion to modify the decree was legal notice to petitioner; that he was her attorney of record and under the evidence the relationship of attorney and client existed between Mr. Garnett and the petitioner ever since the prior order of September 30, 1940. Petitioner contends that while Mr. Garnett was her attorney in the prior proceeding which resulted in the order of September 30, 1940, such relationship was terminated shortly thereafter, and never existed from that time until his re-employment about the first of September, 1941. If the relationship of attorney and client did exist between petitioner and Mr. Garnett at the time of the attempted service of notice in the last proceeding, and said relationship pertained to the subject of said proceeding, the notice was adequate; otherwise it was not notice to petitioner. On this particular contested question of fact the commissioner fairly, and with painstaking care, set forth the evidence and concluded that it was insufficient to show that the relationship of attorney and client did exist at the time of the attempted service of notice on Mr. Garnett. In this connection it is necessary to review more in detail all of the evidence bearing upon the relationship that did exist between Mr. Garnett and the petitioner after the termination of the proceeding of September, 1940, up to the time of the service of notice on him of the motion to modify the decree respecting custody of the child in question.

When the divorce suit was instituted peetitioner was and ever since has been a resident of the State of Louisiana. She was not repre-

sented by anyone in the original divorce case. Almost four years after the decree Mr. Garnett, a Kansas City attorney, was employed to represent her and did represent her in various proceedings culminating in the modified decree respecting custody of the child which was entered September 30, 1940. A few days thereafter and about October 9, 1940, Mr. Garnett sent a statement for his services to petitioner and promptly received a check for the same. There was no further motion filed or action instituted or pending in reference to the order of September 30, 1940. It was a final judgment. Thereafter there were certain communications by letter, telegram or telephone between Mr. Garnett on the one hand, and the petitioner, her present husband, her father and an attorney in Louisiana on the other. Special reliance is placed upon these communications by respondent in his contention that the relationship of attorney and client between Mr. Garnett and the petitioner was a continuing one and that it in fact existed at the time notice of the last modification proceeding was served. What actually occurred, and all that occurred, may be summarized as follows: Shortly after the order was entered the attorney furnished a memorandum opinion as to its validity. In December, 1940, Mr. Garnett was requested by petitioner to convey a message to respondent of her conclusion not to send the child to him for the Christmas holidays. Mr. Garnett wrote a letter to Mr. Clark conveying that message. After the termination of the proceeding in September, 1940, and according to the terms of the decree allowing attorneys' fees, Mr. Garnett received at his office monthly payments of $5 and credited the same to Mrs. Fernbaugh's account. This money, by the decree of court, was allowed as an attorney's fee and why it was credited to Mrs. Fernbaugh's account is not specifically explained unless by inference Mrs. Fernbaugh had paid Mr. Garnett in full. After the episode of Mr. Clark's recovery of the child in Louisiana in July, 1941, the father of Mrs. Fernbaugh, apparently on his own account, wrote to Mr. Garnett on July 16, 1941, requesting him to regain custody under the existing decree of 1940, but "not to take any legal action;" and that "we will decide what action is to be taken further down the road." At that time Mrs. Fernbaugh's father resided in Mansfield, Louisiana, and she resided in the town of Natchitoches. Plaintiff testified that she knew nothing about it for several days thereafter. Mr. Garnett called on respondent according to his testimony on July 20, 1941; respondent says it was July 13. The purpose of the call was on account of the inquiry made in the letter of July 16 from the father of petitioner concerning the safety of the child and to request that she write to her mother. Respondent testified that at this time Mr. Garnett said that he wanted to be notified and to be present when the child was taken before the court for the informal hearing as provided in the decree. Mr. Garnett denied this and stated that he informed respondent that he had no authority to appear for petitioner. There is evidence that the secretary in the office of counsel

1210

for respondent telephoned to someone' in Mr. Garnett's office in reference to the time the child would appear for informal inquiry, and that at the time such inquiry was held Judge WALTNER called Mr. Garnett by telephone, and that Mr. Garnett explained to the judge that he had not been re-employed by Mrs. Fernbaugh and had no authority to appear for her. This occurred in the latter part of July.

"On August 13, 1941, a copy of respondent's motion to modify and a notice for hearing on August 15 were left at Mr. Garnett's office. He ascertained this fact on the following day and promptly returned the papers to the office of the attorney from whence they came with the advice to the person in charge of the office that he had no autority to accept them, and requested that counsel for respondent be so notified. However, the papers were again returned to his office on the same day, August 14. He then wrote a letter to Judge WALTNER and personally delivered it at the judge's office, and to his secretary, advising that he had not been employed in the new modification proceedings and had no authority to accept service for Mrs. Fernbaugh or to appear for her. On August 14, 1941, Mr. Garnett sent a copy of the motion to an attorney friend of Mrs. Fernbaugh's in Louisiana, and in the letter accompanying it discussed possible procedure and urged that Mrs. Fernbaugh enter appearance and defend the new motion. The Louisiana attorney replied on August 16, 1941, and among other things stated that he would discuss the matter with Mrs. Fernbaugh and would write Mr. Garnett "as soon as we decide what course of action she wants to take." On August 17, 1941, Mrs. Fernbaugh wrote to Mr. Garnett and among other things said that she was not in a financial condition to fight the new move for custody. On August 20, 1941, Mr. Garnett again wrote Mrs. Fernbaugh, in which letter he discussed the probable results of a failure to defend against the new motion for custody and stating that her attitude toward the defense made matters difficult. He recommended appearance and asked for an early decision. In this state of affairs, respondent and his counsel appeared in the Circuit Court at Independence on August 22, 1941, to present and have heard their motion to modify the decree which was then set for hearing. At that time, on account of the absence of the regular judge, a special judge was sitting. When the case was called the judge inquired who represented the defendant (mother) and was informed by counsel for Mr. Clark that Mr. Garnett represented her and had been served with notice. The judge requested the clerk of the court to call Mr. Garnett and advise him that the motion to modify was up for hearing. The clerk did so and testified that Mr. Garnett reported that he had written to Louisiana and also to Judge WALTNER and "that he did not have anything to do with the case or something to that effect." This information was reported to the judge. There is evidence that the judge was doubtful as to his right to proceed, but upon consideration of some authority presented by counsel for respondent did proceed to

hear the motion and entered th eorder modifying the decree as heretofore described on the 22d day of August, 1941, giving entire custody of the child to respondent.

On September 1, 1941, Mr. Garnett received a long distance telephone message from Mrs. Fernbaugh advising him that she had made financial arrangements to enable her to defend the new motion and authorizing him to proceed as he thought best. Thereupon, Mr. Garnett prepared a cross-motion in the pending modification proceeding, as he thought, and sent it for approval to Mrs. Fernbaugh with a letter September 3, 1941, stating that he hoped to get some arrangement with counsel on the other side as to the date of trial, and on the same day Mr. Garnett wrote counsel for the other party that Mrs. Fernbaugh had authorized him to enter appearance in the modification matter and that he would file a cross-motion; and on the same day he wrote Judge WALTNER to the same effect, suggesting that time might be requested for taking depositions. A motion to set aside the default order transferring custody of the child was filed by Mr. Garnett about September 6, 1941. Attached to it was his affidavit, which affidavit and motion were offered in evidence by the respondent. The affidavit shows that on September 4, 1941, Mr. Garnett went to the courthouse at Independence preparatory to filing a cross-motion and there discovered in the records for the first time that the order of August 22, 1941, had been made. He then filed the motion to set the order aside, together with his affidavit, on September 6, 1941, tendering therewith for filing petitioner's answer to respondent's motion to modify and a cross-motion to set aside the decree and modify the original decree. On the same day he wired Mrs. Fernbaugh what he had discovered and informed her of his intention to file a cross-motion and to start *habeas corpus* proceedings.

The petitioner and Mr. Garnett both positively testified that the first employment of Mr. Garnett was in reference to the proceedings in 1940; that his services were fully and promptly paid for shortly after the decree of September 30, 1940; that Mr. Garnett performed no other or further legal service, or any other service for compensation, for Mrs. Fernbaugh until his re-employment September 1, 1941.

Where the relationship of attorney and client is assested to exist, and it being denied by the attorney and the alleged client, the burden of proof certainly rests upon the party making the claim of such relationship. Respondent has not met that burden in this instance, and the conclusion here reached upon all the evidence is in accord with the finding and conclusion of the commissioner that there was no new employment of Mr. Garnett by the petitioner on or before August 13, 14, 15, or 22, 1941, to represent her or enter her appearance in the matter of the modification proceedings in which the order of August 22, 1941, was made.

The fact that Mr. Garnett was at one time an attorney of record for petitioner in the modification proceeding in September, 1940, does not make him the continuing attorney for any future modification that might be sought as contended for by respondent. The modification made in September, 1940, became final. Any further modification would necessarily have to be sought in a new and independent proceeding with proper notice to the parties interested, and such new proceeding would depend upon new and changed conditions affecting custody. [North v. North (Mo.), 100 S. W. (2d) 582, 587, et seq.; Tossier v. Tossier (Mo. App.), 33 S. W. (2d) 995.] There is no sufficient evidence in this case to warrant the conclusion that Mr. Garnett was retained as attorney for any purpose whatever other than for the modification in September, 1940, until September 1, 1941. "The presumption of law being that the relationship between an attorney and his client ceases with the termination of the litigation for which the attorney was retained, no notice to him after final judgment is binding on his client except notice of appeal, or of a similar proceeding, in that particular suit." [6 C. J., p. 640; 7 C. J. S., p. 940; Konta v. St. Louis Stock Exchange, 150 Mo. App. 617, 131 S. W. 380; Pulitzer v. Publishing Co. v. Allen, 134 Mo. App. 229, 113 S. W. 1159.]

The main reliance of respondent is the case of State ex rel. Shoemaker v. Hall, 257 S. W. 1047, for his contention that service upon attorney Garnett was sufficient. There was a dissent in that case by two judges, a concurrence in result only by three judges, and the seventh judge did not vote. A modification respecting custody of a child and determination of the legitimacy of the child was sought after the divorce decree. The wife was a non-resident. Notice was attempted by publication and by service on the attorney of record in the original divorce suit. Upon a demurrer filed by the wife on jurisdictional ground, she agreed to the taking of depositions. The author of the opinion held that by taking of depositions without reservation, and by admissions of fact relative to the merits the objection to jurisdiction was waived. It was further held that the service of notice on the attorney in St. Louis who had represented the wife in the original divorce case was valid and binding on her. As remarked by Judge GRAVES while referring to this case in his opinion in State ex rel. v. Falkenhainer, 309 Mo. 224, 235, 274 S. W. 758, "it must be noted that there were several theories of jurisdiction in that case of which the appearance at the taking of depositions was one. The three concurring judges (necessary to make a judgment) only concurred in the result, so that no law was made by the opinion, unless it be in the *per curiam* opinion, in which there was an unrestricted concurrence of five judges." The ruling in the Hall case is approved to the extent that appearance in the taking of depositions upon the merits of the action had the force and effect of submitting to the jurisdiction of the court. The Hall case is referred to again

in the case of Laumeier v. Laumeier, 308 Mo. 201, 271 S. W. 481, pointing out that a majority of the court did not concur in all points of law announced in the opinion. Furthermore, there are distinguishing features in the Hall case. One of the main purposes was to determine legitimacy of a child. The attorney in the Hall case was the attorney of record in the original divorce case. The attorney in this case had no connection with the divorce case or any proceeding in it until approximately four years after the decree, and then only in reference to the modification of the custody decree. As the commissioner has found, the holding in the Hall case has been applied subsequently only to the extent that appearance by taking deposition was sufficient to confer jurisdiction. It is not clear that a majority of the court in the Hall case either ruled, or intended to rule, that an attorney, who was once an attorney in a divorce case in which the judgment had become final, was competent to receive notice and service of process in behalf of his former client in a new and independent proceeding to modify a decree affecting the custody of a child, and was so competent merely from the fact that he had previously been an attorney of record, and without any showing of his re-employment or authority to act in the new proceeding. The conclusion of the commissioner that the service on Mr. Garnett was insufficient to give the circuit court jurisdiction over the person of petitioner in the modification proceedings begun in August, 1941, is adopted and confirmed.

There is no merit in the contention of respondent that petitioner had actual notice of the pendency of the motion to modify on August 16, 1941, when she received a copy of said motion that had been forwarded to Louisiana. Actual notice does not meet the requirement of legal notice (Tatum v. Ramey, 134 Mo. App. 722, 725), and even if it did, actual knowledge on the part of petitioner on the 16th of August would avail nothing in view of a notice of hearing to be held on the 15th of August; neither would it be adequate notice for a hearing on the 22d of August. There was no knowledge on her part of any hearing on that day.

The further main contention of respondent is that exclusive jurisdiction of the subject-matter of this proceeding is in the circuit court by reason of the fact that petitioner filed her motion to set aside the order and decree of August 22, 1941, and has taken depositions in support of her motion and cannot now attack the judgment in this court or elsewhere until the circuit court has acted. The petitioner did file her motion and did take depositions, but the purpose of her motion was to raise the question of jurisdiction over her person as of the date the order was made, and to advise the court that if a hearing were granted to her she would have a substantial defense thereto, and requested leave to file her answer and cross-petition to be set down for hearing. Her appearance was entered only for the purpose of future action and did not have the effect of waiving the question of jurisdiction and conferring jurisdiction on the court to enter

the order made on August 22, 1941. Krueger v. Krueger (Mo. App.), 107 S. W. (2d) l. c. 972, cited by respondent does not hold otherwise. The authorities cited under the first point dealt with in this opinion dispose of the contention now made, and firmly establish the right of petitioner to test the validity of the order entered August 22, 1941, in a *habeas corpus* proceeding.

In taking depositions in Louisiana, a question arose over the introduction of a certain letter. Local counsel for petitioner in Louisiana made the objection that it was a privileged communication between attorney and client. The particular letter to which the objection was made appears to have been one dated October 9, 1940, from Mr. Garnett to Mrs. Fernbaugh acknowledging receipt of his fee for the first modification proceeding in 1940. The objection made referred to any letters received by or written to Mrs. Fernbaugh by Mr. Garnett during the latter part of August or September, 1941. However, the particular letter in question, dated October 9, 1940, was tendered by counsel before the commissioner, and according to the evidence of petitioner and Mr. Garnett all letters between the two modification proceedings were in evidence except the one of October 9, 1940, which petitioner offered to produce but which offer was not accepted. The point sought to be made by respondent is that the claim of privilege made in the taking of depositions is inconsistent with the claim that Mr. Garnett was not the authorized attorney for petitioner and qualified to receive notice of the motion presented to him on August 13, 1941. There is no claim that all communications between Mr. Garnett and Mrs. Fernbaugh by letter during the period in question are not in evidence in this case, or made available to respondent. All this has been considered in the ruling made on the question of the relationship of the parties.

Another issue raised by the return, presented to and considered by the commissioner, was the sufficiency of the petition to warrant the issuance of the writ. The commissioner found that the petition proceeds on the theory of no valid judgment and that the facts pleaded, taken as true, show a void judgment; that the petition was sufficient to confer jurisdiction, and the writ should not be quashed. There was no exception filed to the finding and conclusion of the commissioner and the subject is now mentioned merely to show that the court takes cognizance of the point as affecting its jurisdiction and finds that the conclusion of the commissioner was correct. The only other controversial feature of the case raised by the return and the answer was the validity or invalidity of the modification decree rendered August 22, 1941, and its effect upon the custodial rights of the parties.

Upon the whole record the finding and conclusion is that the exceptions of respondent should be overruled; that the findings and conclusion of the commissioner should be adopted and approved; that the so-called judgment of the circuit court entered August 22, 1941, was

rendered without legal notice to petitioner and was an excess of juris-diction and was no judgment at all.; that at the time of the filing of the petition for the writ in this case, and the issuance of the writ, petitioner was legally entitled to the custody of the child in question under the terms and conditions of the modification decree entered September 30, 1940; that she was illegally deprived of such custody at such time by respondent; that the custodial rights of the respective parties at this time and hereafter should be determined by the terms and conditions of the decree of September 30, 1940, as above described, until such decree is legally modified. It now appears that during the pendency of this case the period during which the petitioner would be entitled to the custody of the child has expired, and that the respondent at this time is entitled to such custody. Notwithstanding the finding and ruling now made that at the time of the issuance of the writ herein the petitioner was entitled to the custody of the child in question, the order of the court at this time in disposing of the custody of the child which was assumed by this court for the purposes of this case, should be to restore custody to the respondent to be exercised by him in accordance with the court order of September 30, 1940, referred to above. The Commissioner so recommends. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of BOYER, C., is adopted as the opinion of the court, and the custody of Carol Clark is awarded in accordance with said opinion herein; and the Marshal of this court is ordered to deliver custody of said child to DeMorse W. Clark, whose custody shall be subject to all the terms and conditions of the court order of September 30, 1940. All concur.

## ON MOTION FOR REHEARING.

BOYER, C.—The respondent herein has filed a motion for rehear-ing. Motions for rehearing in this court, as applied to cases wherein the statutory right of appeal has been given, serves two purposes. By the motion we are informed of matters. of claimed error and contention of conflict with opinions of the Supreme Court. This to the end of uniformity of law. If the motion be overruled, it becomes the basis of application for *certiorari* in the Supreme Court. The matter of *Habeas Corpus Ad Subjiciendum,* herein involved, is a writ of right which the sovereign people have reserved and no delegation of power by the sovereign people to suspend this writ or to interfere with the right reserved, has been delegated to the legislative or judicial branches of government. The sovereign people have, however, delegated to constitutional courts, inferior and superior and to the judges thereof, the concurrent duty of enforcing the right.

In appellate cases the judgment and the execution thereof is sus-pended. Ten days are given for filing of motion for rehearing; there-

after, this motion is taken up for consideration in council, and, if overruled, thirty days are given for application for *certiorari* which must thereafter be considered in the Supreme Court, and if granted, our record is certified to that court for its action thereon, and if the Supreme Court considers our opinion is in conflict, our opinion is quashed and cause remanded for rehearing. If not in conflict, the Supreme Court quashes its own writ and in that event the judgment of this court becomes final and subject to execution. It therefore happens that not only weeks and months, but possibly a year or more of delay before judgment of this court, in matters wherein an appeal lies, is effective and in cases of our opinion being upheld, not effective, or subject to execution until the processes peculiar to appeal cases have expired.

The application of the processes in the matter of the statutory right of appeal, if applied to matters in *habeas corpus*, would entirely nullify the right of the writ and render the matters therein moot, in that citizens would have been restrained of their liberty the full time of their incarceration under unlawful procedure and would permit indefinite incarceration wherein no due process of law had been had. In other words, the reserved right of the sovereign people would be nullified and the right suspended.

The fact that *habeas corpus* has been declared a proper remedy in determination of custody of infants does not delegate to the judiciary the right to destroy the prerogative of the writ as to finality, self-execution and *res judicata*. [Weir v. Marley, 99 Mo. 484.]

This court had jurisdiction of the parties and subject-matter and reached a unanimous conclusion on the merits. That judgment was final and conclusive on the merits and its provisions executed and carried out before the motion for rehearing was lodged with the clerk of this court. Such a motion serves no lawful purpose at this time, and has no proper place in this proceeding.

We do not mean to say the Supreme Court cannot review the record as to jurisdictional matters and errors appearing on the face of the record, but such must be reached by an original proceeding of *certiorari* in said court and not by the usual proceeding followed in an appealable case.

For cases limiting the scope of inquiry by the Supreme Court on *certiorari* in *habeas corpus* proceedings, see State ex rel. v. Westhues, 315 Mo. 672; State ex rel. v. Skinker, 324 Mo. 955; State ex rel. v. Wurdeman, 254 Mo. 561; State ex rel. v. Simmons, 112 Mo. App. 535. It follows that said motion for rehearing is stricken. *Shain, P. J.*, and *Cave, J.*, concur; *Bland, J.*, dissents as to striking the motion and votes to overrule the motion for rehearing.