Verla **CHILCUTT**, Plaintiff-Appellant,.

v.

Joseph W. **BAKER**, Defendant-Respondent..

No. 31741.

St. Louis Court of Appeals.

Missouri.

Dec. 15, 1964.

Nelson B. Evans, Arnold, for plaintiff-appellant.

Joseph W. Dierker, John B. Sharpe, St. Louis, for defendant-respondent.

DOERNER, Commissioner.

Plaintiff appeals from an order granting only in part her motion to modify that portion of a divorce decree respecting the custody of the parties' children. This is the second time the matter has reached this court, Chilcutt v. Baker, Mo.App., 355 S.W. 2d 338.

A brief résumé of the prior events will prove helpful to an understanding of the present proceedings. Plaintiff Verla Chilcutt, then Verla Baker, filed suit for divorce on February 27, 1960, charging her then husband, defendant Joseph Baker, with general indignities. She prayed for a decree granting her custody of their two children, Ralph, then nine years of age, and Patricia Ann, then three. Defendant filed an answer and cross-bill on October 10, 1960, in which he alleged that plaintiff had deserted him on February 15, 1960 and had associated with another man (her present husband, James Chilcutt) both prior to and after the separation. He also sought custody of the children. Plaintiff did not appear at the trial and her petition was dismissed for failure to prosecute. A stipulation was filed which disposed of the rights of plaintiff in certain real estate for a stipulated sum, and which further provided that defendant, if granted a divorce, should have custody of the two children subject to certain custodial privileges to be granted the plaintiff. However, by its decree of October 31, 1960, the court gave the custody of the children to defendant but made no award of visitation or temporary custodial rights to the plaintiff.

On February 4, 1961, plaintiff filed what was captioned, "Motion to Modify." In it she alleged that she had signed the stipulation regarding the custody of the children without benefit of counsel; that in doing so she had relied solely on representations made to her by counsel for her then husband, the defendant; and that she had since ascertained that she had not been correctly advised regarding her rights of custody. She prayed that the decree be modified by granting her custody of the children, together with an allowance for their support. At the conclusion of the hearing the trial court denied her motion, and plaintiff appealed. As we pointed out in our former opinion, 355 S.W.2d 338, 339, the allegations in plaintiff's motion constituted an attack on the validity of the decree itself rather than the averments ordinarily found in the customary motion to modify. But we said that since the matter had been tried by both parties upon the theory that it was a motion to modify we would therefore consider it amended to meet the proof and theory upon which it was tried. We further stated that the motion had been presented in such a cursory manner that the facts necessary for a modification of change of custody had not been as exhaustively developed as they should have been, and for that reason the court had properly denied the transfer of custody to the plaintiff. We held, however, that the evidence was sufficient to call for a modification of a decree so harsh that it made no provision for visitation privileges. Accordingly, we reversed the judgment and remanded the case with directions to modify the decree so as to give plaintiff certain stated rights of temporary custody. Our opinion was handed down on March 20, 1962.

It appears from the transcript that thereafter, on October 11, 1962, plaintiff filed what was captioned, "Plaintiff's First Amended Motion to Modify" in which she alleged that since the original decree had been granted there had been a change of circumstances in that she had remarried; that she and her present husband were able to furnish a suitable and proper home for the children; and that they were desirous of having custody of and properly raising them. Plaintiff further alleged that since the denial of her first motion for change of custody further changes in the circumstances relevant to custody had occurred in that plaintiff and her husband had purchased a seven room house, located near a school and a church; that plaintiff's mother-in-law was living with plaintiff and her present husband, and would care for the children while both were away at work; and that both children had expressed a desire to live with plaintiff. The prayer was for absolute custody, with reasonable visitation privileges in favor of defendant, and for support money.

The transcript further indicates that pursuant to a stipulation signed by the

parties the court on January 16, 1963 sustained plaintiff's motion in part by modifying the decree so as to increase the time during which plaintiff was to have temporary custody of the children.

Less than five months later, on June 4, 1963, plaintiff filed the motion which gave rise to this appeal, terming it, "Plaintiff's Motion to Modify Divorce Decree." As subsequently amended, her allegations are that since the last decree there has been a great change in the circumstances, condition and facts relative to the welfare of the children, especially Patricia Ann, in that: the facts supporting the last motion to modify were not exhaustively developed; the attorneys who were employed to represent plaintiff in the presentation of the last motion induced plaintiff to sign the stipulation regarding custody, subsequently approved by the court, " * * * which stipulation * * * was not for the benefit and welfare of the said children and which stipulation was signed by reason of the ill advice and inducement of her attorneys and against the will of this plaintiff"; that the children should attend Sunday School and church with their mother; that plaintiff and her present husband have a new seven room home close to a school and to their church; that the children, especially Patricia Ann, have expressed a sincere desire to live with plaintiff and her present husband; that the children are really in the custody of defendant's mother "who is aged and very much handicapped by reason of said age, the result of which is neglect of care and control"; that the welfare of the children would best be served by granting permanent custody to plaintiff with reasonable rights of visitation and temporary custody to defendant; that defendant has failed to obey the decree of January, 1963; and that plaintiff has a competent, trustworthy and good person to care for the children while she is away from home. Plaintiff prayed that the decree of divorce be modified to give her absolute custody, subject to visitation and temporary custody privileges in favor of defendant; for an allowance for support; and for attorneys fees and costs.

At the start of the hearing on the present motion counsel for plaintiff, in his opening statement, declared that plaintiff's evidence would show that plaintiff's former counsel, who had represented plaintiff in the preceding motion which culminated in the modification of January 16, 1963, had coerced plaintiff into signing the stipulation regarding temporary custody, over her protest that she did not want to sign, on the representation that unless she signed she wouldn't get anything. Counsel for defendant objected, and in the ensuing discussion stated that if that subject was gone into he wanted time to subpoena former counsel. The court pointed out that the present motion was one to modify the amended divorce decree, which acknowledged the fact that the decree (as previously modified) existed; that no motion to set aside the decree or the modification of January 16, 1963, had been filed; and that the evidence at the hearing would be confined to any change of condition which had occurred since that date. Counsel for plaintiff then stated that, "We would like to have a slight recess to file a motion to set aside that stipulation that was signed, for the reason of the fact that it was signed in coercion and ill-advised." The court informed plaintiff's counsel that he would pass plaintiff's motion down on his docket and that if counsel cared to file any other motions he should prepare them and the court would look at them. Counsel for plaintiff presumably did not prepare or file any other motion for none is included in the transcript. Instead, the record shows that the cause was recessed until the completion of the court's docket, and that the parties then proceeded to trial.

Plaintiff's testimony was that since May, 1962, plaintiff and her present husband have been living in a new home which consists of a living room, three bedrooms, a kitchen, one-and-a-half baths, and a utility room, and has all modern conveniences. It is

located in an excellent neighborhood, close to the church which they regularly attend, and a quarter of a mile to a public school, to which bus service is available. Plaintiff and her present husband are both employed at Industrial Engineering in Brentwood, she at a salary of $80 per week and he at $84. They have a bank account (amount not stated) and are saving money. She and her husband arrive home from work about 4:30 P.M., which is the approximate time Patricia Ann would return home from school. She has made arrangements with her next door neighbor, Mrs. Emilie Dodson, to take care of the girl after school if that is necessary. Plaintiff described defendant's home as having four large rooms downstairs, and the same amount of unfinished space upstairs. She stated that the furnace had burned out, that heat is supplied by one gas heater in a middle room, "and when I would go to visit the children they had on three pairs of pants to keep warm and sweaters in the house." As to the neighborhood, plaintiff stated that it was poor, that there was a parking lot on one side of defendant's house, a little store on the other, and an old house across the street. On cross-examination plaintiff conceded that the house was the same one which she and defendant had occupied during their marriage, with their children, but stated that when she lived there it had a furnace in it. The only evidence offered in support of the charge in the motion that defendant had failed to obey the decree of modification of January 16, 1963, related to an occasion when plaintiff came to get Patricia Ann, after the child had undergone a tonsillectomy. Plaintiff was handed a letter from the doctor by defendant's mother which stated that it would be advisable to leave the child in her home, but plaintiff insisted on taking the child. On re-direct plaintiff was asked if she had consulted the doctor, and what the doctor had said, and answered, "He told me, if I wanted the girl that I could take her and they could not keep me from it, that it was on the court record that I was to have her."

Plaintiff further testified that she had bought clothes for Patricia Ann, and had paid some doctor bills. She stated that defendant was employed by a trust company but that she had no knowledge regarding his earnings. Plaintiff testified that defendant's mother, Mrs. Carrie Baker, lives in defendant's home and takes care of the children. There was no evidence offered as to Mrs. Baker's age, nor any evidence that because of her age the children were neglected as to care and control, as alleged in the motion. On direct examination plaintiff testified that both defendant and Mrs. Baker, in the presence of Patricia Ann, had charged her with being an adultress and with living in adultery because she had remarried; that in the presence of the child defendant had told her she was bound for hell; that defendant was trying to teach the little girl to hate her; and that he had threatened Patricia Ann with a reprimand in case she catered to or loved plaintiff. Plaintiff denied that she had committed adultery or had had intercourse with her present husband prior to their marriage. During direct examination plaintiff's counsel sought to develop from plaintiff that no evidence was heard on the motion which culminated in the modifying decree of January 16, 1963. The court sustained defendant's objection that no attack was being made on the validity of that order; that the order was made by agreement and stipulation; and that only the evidence which would be received would be that relating to any change of conditions which had occurred since the order was entered.

The remainder of the evidence offered on behalf of plaintiff consisted of the testimony of her present husband that his home had cost $10,600, that his daughter by a previous marriage visits him and is supported by him, that he loved Patricia Ann and would treat her as though she was his own daughter; the testimony of Reverend John Land, pastor of the church to which Mr. and Mrs. Chilcutt belonged, who stated that they attended church regularly, that

plaintiff's reputation in the community for chastity, morality and trustworthiness was excellent, and that in his opinion Patricia Ann loved plaintiff and plaintiff loved Patricia Ann; the testimony of Mrs. Emilie Dodson, plaintiff's neighbor, who stated that she would give Patricia Ann the best of care, that she had two children of her own, and that the little girl reciprocated plaintiff's love for her; and the testimony of Mary Lou Tyler, who said that plaintiff's reputation for chastity, morality and truthfulness was excellent.

The transcript shows that at the conclusion of her evidence plaintiff through her counsel expressed a desire for the court to talk to Patricia Ann in the presence of the attorneys for the defendant and the plaintiff. In response, the court requested: "THE COURT: Gentlemen, let's step into Chambers for a few minutes." The transcript shows that there was a recess while the court and counsel were in chambers, and the next item in the record is the court's statement for the record that the decree would be further modified so that plaintiff shall have custody of both children every other weekend commencing at 5:00 P.M. on Friday and ending at 5:00 P.M. on Sunday; that on the other weekends plaintiff shall have custody commencing at 5:00 P.M. on Friday and ending at 10:00 P.M. on Saturday; and that in all other respects the motion to modify was denied and the decree as it theretofore stood is to remain in full force and effect. Thus there was no evidence offered on the part of defendant.

■ Plaintiff's brief falls far short of complying with Civil Rule 83.05(c), (d), and (e), V.A.M.R. Only the fact that the custody and welfare of children are involved has induced us to refrain from taking appropriate action under Civil Rule 83.-09. Ambrose v. M.F.A. Co-Operative Ass'n of St. Elizabeth, Mo., 266 S.W.2d 647. Plaintiff's first complaint, as best we understand it, is that the court erred in refusing to admit evidence striking at the

validity of the original decree of divorce and that of the order of January 16, 1963. There is no merit to this contention. An "* * * original divorce decree is final and binding and cannot be disturbed except upon a proceeding and hearing held for that very purpose. * * *" Hayes v. Hayes, 363 Mo. 583, 252 S.W.2d 323. The same is true of an order modifying such a decree. Wood v. Wood, Mo.App., 378 S.W.2d 237. The subject of the inquiry under a motion to modify a decree of divorce is whether there has been such a change of condition since its rendition as will justify and require its modification. Hayes v. Hayes, supra; Fernbaugh v. Clark, 236 Mo.App. 1200, 163 S.W.2d 999, 173 S.W.2d 646. Such a motion cannot be employed as the means for a collateral attack upon the decree, for if the requisite grounds exist the proper procedure is by a direct attack in a court of equity. Hemphill by and through Burns v. Hemphill, Mo., 316 S.W.2d 582; McCarty v. McCarty, Mo., 300 S.W.2d 394; Coleman v. Coleman, Mo. App., 277 S.W.2d 866. The evidence regarding the alleged conduct of counsel may have been admissible to "* * * sheds light upon the compulsions or impulsions under which the plaintiff acted at the time * * * to aid in determining a change of condition under which the decree may be modified." Chilcutt v. Baker, Mo. App., 355 S.W.2d 338, but it was not admissible for the purpose of vitiating in this proceeding the original decree or the order of January 16, 1963.

■ Plaintiff also complains that, "The Court erred in ordering the attorneys into his private chambers, after the plaintiff had rested, and rendering his judgment and decree in the aforesaid chambers; in the absence of the court stenographer, which action upon the part of the court made an incomplete record of the entire cause of action." In the first place, the court did not order the attorneys into his chambers; as the passage quoted from the transcript shows, he requested them to enter with him. And in the second place, the court did not

render his judgment and decree " * * * in the absence of the court stenographer * * * " because the record shows that he dictated his order to the court reporter.

Plaintiff's final two points may be considered together. It will be recalled that following the conclusion of plaintiff's evidence and the conference in chambers the court dictated to the court reporter his order further modifying the decree, and that the defendant did not offer any evidence on his behalf. Plaintiff now contends that the court erred in that it, " * * * did not hear all of the evidence on the part of the defendant"; that defendant and his mother are teaching the children to hate plaintiff " * * * and it could have been shown on the part of the plaintiff by the aforesaid parties themselves should they have been permitted to testify as they both were present at the hearing"; and that plaintiff's uncontradicted evidence established that the welfare and best interests of the children required that they be placed in the custody of plaintiff. By the first part of his argument counsel for plaintiff is attempting to shift from his own shoulders the responsibility for the failure to obtain the testimony of defendant and his mother. It is true that in a divorce case, because of the vital interest of society at large in the preservation of marriages, a trial judge may, in the conscientious and faithful discharge of his duty, elicit testimony from witnesses, cause other witnesses to be subpoenaed, and in all proper ways develop pertinent evidence not adduced by the parties themselves. Gosnell v. Gosnell, Mo. App., 329 S.W.2d 230; May v. May, Mo. App., 294 S.W.2d 627. A minor child of divorced parents becomes a ward of the court, which has the duty of ascertaining the best interests of the child, and of necessity the court is vested with a broad discretion in all matters pertaining to the child's welfare. Dupree v. Dupree, Mo. App., 357 S.W.2d 241; Schumm v. Schumm, Mo.App., 223 S.W.2d 122. We have no doubt that for the purpose of determining the best interests of a child in a matter involving its custody the court may similarly elicit testimony from witnesses, cause witnesses to be subpoenaed, and otherwise properly develop pertinent evidence. Zamzow v. Zamzow, Mo.App., 159 S.W.2d 346. But ordinarily it is the function of counsel, not that of the court, to offer any and all evidence pertaining to the welfare of the child, particularly when, as here, he maintains that such evidence would support his client's position. If counsel was of the opinion that defendant and his mother would have testified that they were teaching the children to hate plaintiff, as he now contends they would have testified, it was his duty to call them to the stand.

We must concede, however, that the state of the record has caused us a great deal of concern as to the disposition we should make of plaintiff's appeal. In a proceeding of this character it is our duty to consider, weigh and evaluate all of the competent evidence tending to prove or to refute the essential factual issues, to reach our own findings, and to render such judgment as should have been rendered. Baker v. Baker, Mo.App., 319 S.W.2d 11; M— v. G—, Mo.App., 301 S.W.2d 865; Schumm v. Schumm, Mo.App., 223 S.W.2d 122. Ordinarily, where the evidence is conflicting and the determination of the factual issues rests upon the credibility of the witnesses the reviewing court will usually defer to the findings of the trial court. But we are not bound by his findings and do not hesitate to make our own where the probative force of the evidence requires it. Clemens v. Clemens, Mo., 235 S.W.2d 342; Oliver v. Oliver, Mo.App., 325 S.W.2d 33; M— v. G—, supra. The difficulty in the instant case is that the only testimony in the record regarding those matters affecting the well-being of the children is that given by plaintiff. And in her testimony plaintiff made serious charges against defendant regarding the surroundings in which the children are being raised, the deficiency which has developed in the home in which they live, the derogatory state-

ments made by defendant in the presence of Patricia Ann impugning the plaintiff's morals, and the attempts of defendant to alienate the little girl's affection for plaintiff. These charges are grave in nature, and the latter, in particular, have been held to be valid grounds for the forfeiture of the right of custody. For as this court said in Kaplun v. Kaplun, Mo.App., 227 S.W. 894, a similar proceeding involving the custody of an eight year old boy: " * * The supreme and paramount consideration is the welfare of the child. It is of that age when most sensitive to influence, and no argument can arise over the proposition that it is detrimental to the child to have any one, especially its father, speak abusively and disrespectfully of its mother." To the same effect see Rone v. Rone, Mo. App., 20 S.W.2d 545, and Baker v. Baker, supra.

■ As the matter is presented to us plaintiff's testimony stands uncontradicted and unrefuted. Neither defendant nor any witnesses on his behalf took the stand to deny the truth of the charges made by plaintiff. Defendant now argues that the trial court had full opportunity to hear plaintiff's testimony and to judge her character while she was on the stand, and intimates that we should presume that the court found her character deficient. But the court's action in increasing the time during which plaintiff was to have temporary custody of the children does not accord with or support such a presumption. Furthermore, where, as here, the paramount consideration is the welfare and best interests of the minor children, and evidence regarding that issue is readily available, we are not inclined to rely on legalistic presumptions. In re Shepler, Mo., 372 S. W.2d 87; In re Duncan, Mo., 365 S.W.2d 567.

■ In view of the gravity of the charges made regarding the well-being of the children, and the absence of any evidence respecting the truth or falsity of such charges, we are of the opinion that in the interests of the children the case should be remanded so that such evidence may be fully developed. M— v. G—, Mo. App., 301 S.W.2d 865; Oliver v. Oliver, Mo.App., 325 S.W.2d 33.

For the reasons stated it is the recommendation of the Commissioner that the judgment be reversed and the cause remanded.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment is reversed and the cause remanded.

WOLFE, Acting P. J., ANDERSON, J., and L. F. COTTEY, Special Judge, concur.