**Ruth Esther GRAHAM, Plaintiff-Appellant,**

v.

**Philip Edward GRAHAM, Defendant-Respondent.**

No. 32981.

St. Louis Court of Appeals.

Missouri.

May 21, 1968.

Edward T. Wright and George D. Pittman, Jr., St. Louis, for plaintiff-appellant.

Granville L. Gamblin and Earl L. Davis, St. Ann, for defendant-respondent.

JAMES H. KEET, Jr., Special Judge.

On April 12, 1966 Appellant, mother of Paul Walter Graham (born March 22, 1961), was awarded an uncontested divorce from his father and custody of her said son, on her divorce petition filed February 23, 1966, alleging general indignities which the father generally denied. The decree awarded Respondent temporary custody on alternate Sundays beginning April 17, 1966 from 9:00 A.M. to 6:00 P.M.; on alternate Saturdays beginning April 23, 1966 from 10:00 A.M. to 6:00 P.M.; and two weeks in summer vacation beginning in 1969.

On March 23, 1967 Respondent moved the trial court to modify the decree so as to allow Respondent (1) temporary custody on alternate weekends from Friday after school until 6:00 P.M. the following Sunday and the right on intervening Sundays to take his son to Sunday School and Church and return him to Appellant at 6:00 P.M., and (2) temporary custody for one week during August of 1967 and 1968.

On April 26, 1967 Appellant moved to modify the decree so as to change the temporary custody to every fourth Saturday from 11:00 A.M. to 4:00 P.M. and every fourth Sunday from 9:15 A.M. to 4:00 P.M., and to increase the child support from $35.00 to $50.00 per week. Both motions prayed for general relief.

Trial on both motions was held on May 17, 1967. The record does not reflect the ages of the parties, or except as mentioned in this opinion, any of the circumstances existing at or prior to the divorce. Without detailing the numerous allegations in each motion as to claimed material change of condition since the divorce (on only some of which there is any evidence in the record), we will set out the evidence we have considered on our review de novo.

Respondent's evidence was to the following effect: He had for the last year been living in a well-furnished two-bedroom modern apartment in a nice area, his first permanent residence suitable for Paul since the divorce, when he lived at a farm but planned to find an apartment or buy a house. Respondent's mother, who lives in Iowa, has visited him but he has never left Paul in her charge, having been with Paul "every minute" while he had his temporary custody. He has taken Paul to the grocery and service station to have the car serviced. They have read and played games together and gone to Respondent's school and its athletic events and to the woods and a farm and to Sunday School and Church, and have been in the homes of Respondent's friends (including his attorney, Mr. Gamblin) where Paul has enjoyed playing with the friends' children and grandchildren. Paul has played with the children of one of Respondent's friends, an assistant high school principal, when he brought his family to Respondent's apartment once for Sunday lunch. According to the testimony of this friend, Respondent was looked on as a dignified, sound person with good judgment among his associates at school and others. Respondent wants and has unsuccessfully tried to get progress reports and recommendations on Paul from the school in which Appellant enrolled Paul without consulting with Respondent. When Paul had the chickenpox, Respondent took some candy and dessert to him but Appellant would not let Respondent in and after a few minutes let Paul come to the door and open it a crack and

accept the confections. Appellant did not attend church prior to the divorce but now teaches Sunday School at Elliott Unitarian Chapel. Paul has visited Respondent's Iowa relatives at Christmas and other times in St. Louis. The parties had agreed to the custody arrangement provided in the divorce decree that Respondent would have temporary custody for two weeks in the summer when Paul reached the age of eight, and that until then (1969) it would be best for Appellant to have complete custody and Respondent to visit with Paul only in the daytime. Respondent had "accepted" this arrangement. If granted temporary custody a week in August, Respondent would take Paul to Iowa to visit them and take a camping trip. He has been promoted from teacher to assistant principal at Parkway High School and is prepared to devote his entire time to Paul when he has temporary custody. Appellant and her mother have become "too possessive," as shown by Respondent's past experience with his mother-in-law and his frequently seeing her car at Appellant's home when he is by there about once a week and from what Paul has told Respondent, and they have denied Paul a normal existence. Paul has had wet shoes several times from walking through wet grass from the car to the house. Respondent has told him that he is a Lutheran and to always be a good one but this has caused no conflict in the boy that he could see. Paul has never objected to the time spent at the Lutheran Church or appeared restless or lost interest in church.

Appellant's testimony was to the following effect: Because of Respondent's irresponsibility at the time of the divorce the parties had agreed that Paul should not stay with Respondent over night until he reached age eight. Since the divorce Respondent had shown himself irresponsible in failing to bring back clothing and "motorific" toys; in being 20 or 30 minutes late several times in bringing Paul home; and with respect to Paul's health. Paul would come home with grass stains, dust,

and dirt on his clothes. Paul came home once from Respondent's with wet feet and began coughing that night. He got oversunburned once after he had recovered from the mumps, had fever, and could not go to summer camp because of this. He had fever also after being exposed to the cold while at a football game with Respondent in December, 1967. Appellant refused to let Respondent see Paul when he had the mumps and chickenpox. She enrolled Paul in Rossman School without consulting with Respondent and instructed the school to give no information on Paul to anyone. She had sent play clothes with Paul for after Sunday School and Church but Paul would come back with his Sunday School clothes wet from washing the car. Paul has played with the children at his school during the week and with some of them on Saturdays. He has missed "social education" at birthday parties because of having to visit Respondent. Paul had said Respondent's Church lasted too long. Paul has attended church with Appellant. The visitations with Respondent make it difficult to get him fed and to bed by eight. Paul is used to eating at six and is very tired after each visit with Respondent. Her home, on a one-acre lot with outside play equipment, is better for Paul than Respondent's apartment. Paul always had a "tremendous" number of toys. If she had anything to do with it, Paul would "never, ever visit with his father." She wants visits with Respondent cut down so he will eventually have nothing to do with rearing Paul. In testifying she requested the court never to let Paul see his father again because of the latter's irresponsibility and "poor training toward this boy."

The trial court on the day it heard the testimony overruled Appellant's motion; sustained Respondent's motion; and awarded temporary custody to him on the first and third weekends of each month from 10:00 A.M. Saturday to 5:00 P.M. Sunday and on the fourth and fifth Sundays of each month from 1:00 to 7:00 P. M. and "one week during August on ten days' written notice to Plaintiff."

On May 24, 1967 Appellant filed motion for new trial, assigning as errors that Respondent had shown no change in circumstances, that the temporary custody matter was res judicata, and that the temporary custody was not for Paul's best interests. It asked a stay of the order pending a ruling on the motion for a new trial, which was overruled on June 14, 1967. Appellant duly filed appeal to this court from the decree of May 17, 1967.

■ Appellant urges in her brief that the evidence did not show any material change in circumstances calling for a modification to promote the best interests of the child and that the decree was based on speculation or experimentation and improperly allowed change of custody at frequent intervals. In his brief, but without moving to dismiss the appeal, Respondent attacks her original brief on the ground, well taken, that it does not contain a fair and concise statement of facts without argument as required by Civil Rule 83.05. Appellant's briefs violate the Rule's requirement of specific page references to the transcript. However, in this case where the evidence was comparatively sparse, her briefs have given us sufficient indication as to her position. The court will refrain from taking appropriate action based on her non-compliance with Rule 83.05 *in this case* involving the welfare of a child. Chilcutt v. Baker, Mo.App., 384 S.W.2d 854, 859 [1]; Biggs v. Biggs, Mo. App., 397 S.W.2d 337, 342[1].

Appellant's brief asks this court only to set aside the trial court's order and overrule Respondent's motion to modify. It emphasizes that he had agreed at the time of the original decree that Paul's best interests would best be served by Paul not being in Respondent's custody except in the day time and for them not to have any summer vacation together until 1969.

■ The original decree dividing the custody did not necessarily negate the fitness of either party. Garbee v. Tyree,

Mo.App., 400 S.W.2d 193, 199–200. It considered Respondent as a parent with whom Paul should have regular visits without Appellant being present—that is, more than just visitation with his father under the roof and eye of the boy's mother. Compare Pelts v. Pelts, Mo.App., 425 S.W.2d 269, 270, where the father, having no home at the time suitable for rearing the boy, was granted liberal weekend and holiday custodial privileges which, the appellate court noted, necessarily ruled that the father was not only a fit person to share in the custody but also the child's welfare would be served by permitting the father to have such contact.

■ We give due deference to the judgment of the trial court according to rules requiring us to do so which need not be annotated here. The trial judge was in better position than we are to evaluate the sincerity of the witnesses and intangibles which do not appear in the printed record. Garbee, 400 S.W.2d 1. c. 201; Pelts, 425 S.W.2d 1. c. 270; J—G—W v. J—L—S—, Mo.App., 414 S.W.2d 352, 360.

■ Appellant urges that Respondent should not be permitted to "shop around" until he finds a trial judge willing to change the decree when there has been no change of circumstances warranting such change. She contends that the trial judge ruled the case "as though he was substituting his judgment for that of the judge who entered the original decree" since there was no substantial change in circumstances. We believe the trial court could properly have found and we do find from the record a situation, developed since divorce time of a possessive mother harboring an attitude toward the father and son which, concentrating on exclusive schooling and keeping the child's feet dry and his clothes immaculate and his meals on exact schedule, blocks Paul's association with his father and the development of normal boyish instincts and his need for broader association with other children. Her rigid attitude toward Respondent may cause Paul,

without sufficient basis, to view his father as irresponsible. It ignores the familiar principle that where both parents are fit, a child's best interests are usually served by having association with both parents. M—L— v. M—R—, Mo.App., 407 S.W.2d 600, 604; P—D— v. C—S—, Mo.App., 394 S.W.2d 437, 645.

The evidence establishes that circumstances had changed, as noted above, to an extent warranting the trial court's decree, which was not a radical modification but a comparatively small increase in contact between a father and a son who has arrived at the age when he needs more contact with his father. Luethans v. Luethans, Mo.App., 243 S.W.2d 801; Pelts, supra, 425 S.W.2d 1. c. 270 (Footnote 1). See also M—L— v. M—R—, Mo.App., 407 S.W.2d 600, 604, where the court stated:

" * * * The boy, now five years old, is verging on an age at which the guidance, direction, supervision, companionship, and love of an understanding father will be most needed and beneficial. * * *"

Upon close consideration of the record we are unable to say that the son's welfare would be best served by a different temporary custody arrangement than that decreed by the trial judge. To give Paul more time with his father to the extent the decree did is entirely consistent with the principle that even full custody of a child of tender years may properly be awarded to the father. See: J—G—W— v. J—L—S—, supra; M—L— v. M—R—, supra, 407 S.W.2d 1. c. 603.

Respondent in his brief asks this court, upon review of the record de novo, to prevent further immediate litigation affecting Paul's welfare by granting a two-week summer period to Respondent, instructing the school to advise him of Paul's progress by mail or otherwise, and by further modifying the decree in such way as the court may find would not disturb Paul's progress and welfare. We believe that the record shows no reason why the original decree's provision awarding Respondent two weeks' temporary custody beginning in the summer of 1969 should have been deleted by the trial court. We conclude that we should, and we do, re-instate it.

We do not deem it appropriate herein to undertake to order the school to advise Respondent as to Paul's progress. However, we emphasize that both parents must recognize and serve the need of keeping each other informed as to their son's progress in school and otherwise and as to his health. This so that they may more knowledgeably and understandably raise the boy.

With the above modification re-instating the two weeks' temporary custody beginning in 1969, the trial court's judgment is affirmed.

ANDERSON, P. J., and RUDDY, J., concur.