**WESTERN HILLS HOTEL, Inc., Appellant,**

v.

**James V. FERRACCI et al., Appellees.**

**No. 15785.**

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 8, 1957.

Rehearing Denied March 8, 1957.

Stone, Agerton, Parker & Kerr, and G. W. Parker, Jr., Fort Worth, for appellant.

Simpson & Simpson, Wade, Davis, Callaway & Marshall, and Clyde M. Marshall, Jr., Fort Worth, for appellees.

MASSEY, Chief Justice.

From a judgment for common-law damages in behalf of the plaintiff and insurance company intervener (under subrogation provisions of the Texas Workmen's Compensation Law, Art. 8306, et seq., Vernon's Ann.Civ.St.), against a third party tort-feasor defendant, the defendant appealed.

Judgment affirmed.

The parties will be styled as in the trial court.

Defendant Western Hills Hotel, Inc., owned certain hotel premises in the City of Fort Worth, Texas. As is not uncommon to the hotel business, certain concessions and the premises upon which such concession business was handled were leased by the defendant. One of these was the catering section of the hotel premises, which was leased to the Western Hills Catering, Inc., which company hired its own employees and operated the kitchen and dining room. One of its employees was the plaintiff in the case, James V. Ferracci, who was hired as a vegetable cook.

As a matter of practice, the defendant hotel company operated a maintenance department, and its employees would make minor repairs and sometimes conduct such operations of more extensive character upon premises leased by concessionaires, for the doing of which the defendant company would sometimes make a charge to the concessionaire, and sometimes not, depending upon the time involved and expense entailed.

On or about date of February 28, 1954, a Sunday, an electrical elevator located upon the premises leased by the catering company became "stuck" in the shaft. This elevator ran from a basement or ground-level storeroom used by the catering company for various purposes, including the storing of potatoes and other vegetables, up to the kitchen on the floor above. It was used for the movement of foods, supplies, etc., from the lower level up to the kitchen, and for the movement of garbage, etc., down out of the kitchen. Apparently, it served a most necessary purpose, for the only other route would be by way of stairs.

A summons was initiated for someone in the defendant's maintenance department to come and attempt to get the elevator back into operation, and one Jackson, an employee of defendant (who apparently knew very little about elevators) went onto the lower level and looked into the elevator shaft. He reached the conclusion that one of the "runners" of the elevator was off a "guide rail" which went horizontally up the shaft. In view thereof, he obtained a long pole "similar to a broom handle", by the use of which he attempted to shift the position of the elevator so that the "runner" would go back into position on the "guide rail". His efforts met with no success. Then he conceived the idea that if he could make a similar effort with the pole while someone on the floor above "kicked" or "bumped" the elevator at the same time, it might be possible that the condition could be corrected. He asked someone connected with the catering company (other than the plaintiff) to perform the function on the floor above, and whoever that someone was did as he requested for a time, but then ceased to do so without explanation. The witness explained that he assumed his "helper" in such respect was summoned to perform some duty of the catering company and had to quit, which was, of course, the proper thing for him to have done.

Shortly thereafter, operations being carried on around him made it obvious to Jackson that the plaintiff was desirous of using the elevator to move some potatoes from the lower floor up to the kitchen level. Jackson told him that if he expected to use the elevator for that purpose, rather than to carry the potatoes up the steps, he would have to help him. He explained that what he wanted plaintiff to do was to "kick and stomp" the elevator on the level above while he pried with his pole on the level below so that the "runner" would go back on the "guide rail". In obedience to the request, the plaintiff went up the stairs and obviously being of the opinion that Jackson's request embodied the instruction that he should get inside the elevator to "kick and stomp", he did get inside it and began to exercise his feet accordingly. It is to be noted that the jury failed or refused to find that Jackson's request embraced any instruction to the plaintiff that he enter the elevator, though they did find that plaintiff was told to "kick and stomp". It is also to be noted that the elevator was stuck in such position in the shaft that its floor was some eight inches to one foot below the floor level of the kitchen premises. It is therefore a reasonable inference that in order to do any effective "stomping" it was necessary that the plaintiff enter the elevator.

Since the photograph of the elevator on the kitchen level adequately demonstrates that the doorframe was of such width that the front edge of the elevator cage was concealed, there is no question but what plaintiff could only have remained on the outside of the elevator and done any kicking or stomping by inserting his foot or leg through the door for some distance to "stomp" down toward the elevator floor, or to "kick" sideways against the walls. While it is plain that plaintiff had no expectation that the elevator might fall, it would appear, as a matter of hindsight, that there was actually less danger of serious injury in getting into the elevator than staying outside, but with one leg through the door.

In accord with Jackson's request, plaintiff was in the elevator "kicking and stomping" for at least five minutes. Jackson ceased to pry with his pole and moved away a few feet, perhaps to consider some new line of procedure, when the elevator suddenly dropped to the lower floor level with the plaintiff inside. It was later learned that the cable which held the elevator suspended in the shaft was broken, and that perhaps but for the fact the "runner" was off the "guide rail" it would have long before fallen to the lower floor. In any event, plaintiff sustained injuries, as first seemingly trivial but later discovered as rather severe, in that he had ruptured an intervertebral disc.

Based upon jury findings supported by pleadings and evidence, the jury found that Mr. Jackson was acting within the scope and course of his employment by the defendant at the time in question, that he instructed the plaintiff to "stomp and kick" the elevator, and that the giving of such instruction was negligence and a proximate cause of plaintiff's injuries. The jury failed to find that plaintiff was instructed to "enter" the elevator. By negative answers to special issues placing the burden upon the defendant, the jury refused to find that plaintiff was contributorily negligent in entering the elevator cage or in stomping or jumping on the elevator floor after entering, and refused to find that plaintiff was in the temporary employment of the defendant or that Jackson was in the temporary employment of the catering company.

The defendant filed motions for judgment on the verdict, for mistrial, for judgment non obstante veredicto, and to disregard the finding of the jury in response to Special Issue No. 6, which found that Jackson's instruction to plaintiff to "stomp and kick" the elevator was a proximate cause of the injuries. All of said motions were overruled, and the court entered judgment in favor of the plaintiff.

To the judgment defendant excepted and has perfected an appeal.

■ By one point the defendant contends that it was entitled to an instructed verdict or to have its motion for judgment non obstante veredicto sustained because plaintiff was guilty of negligence as a matter of law in getting into the elevator and stomping the same. Defendant cites in support of its contention the case of West Texas Utilities Co. v. Harris, Tex.Civ. App. Eastland 1950, 231 S.W.2d 558, 564, writ refused, n. r. e., and language quoted therefrom, as follows: "While the undisputed evidence shows, as it does here, the existence of danger and that the injured person knew of the danger and exercised no care for his own safety, contributory negligence of the injured party is shown, as

a matter of law." The case cites many authorities in support of the statement. But we are of the opinion that the case before us is not affected thereby for the reason that plaintiff here is most certainly not shown to have known or appreciated the danger incident to his acts. It was at the instance of Mr. Jackson, a man whom plaintiff might reasonably have supposed to have superior knowledge and adequate skill and prudence, no evidence to the contrary being shown, that plaintiff attempted to aid in getting the elevator back into operation. Under these circumstances, plaintiff could not be held to have been negligent as a matter of law. 33 Tex.Jur., p. 75, "Personal Injuries and Wrongful Death", sec. 47, "Contributory Negligence"; Triangle Motors of Dallas v. Richmond, 1953, 152 Tex. 354, 258 S.W.2d 60; Hugo, Schmeltzer & Co. v. Paiz, 1911, 104 Tex. 563, 141 S.W. 518.

■ The defendant contends that it was entitled to an instructed verdict or to have its motion for judgment non obstante veredicto sustained because plaintiff must, under the circumstances, be held to have, as a matter of law, become a loaned employee of the defendant, or alternatively, that Jackson must be held to have become a loaned employee of the catering company. It is to be remembered that by an answer to a special issue, burden of which was cast upon the plaintiff, it was established that Jackson was acting in the furtherance of the defendant's business at the time in question, and for the accomplishment of the object for which he was employed. It is to be further noted that no special issue was submitted to the jury upon the question of plaintiff's employment. The question is not one of law in any event, though it might be one of fact. Certainly the plaintiff did not become the servant of the defendant ·in performing the immediate service for it though it might be considered to have involved a function in the nature of "special employment". A previous function, identical or near-identical to that being performed by the plaintiff, had been

performed by another unnamed employee of the catering company,—and this employee stopped presumably because of some conflicting duty of his employment by the catering company. Plaintiff's own acts were shown in the evidence to have been performed in furtherance of his own or his employer's interests, in that the elevator could not be used by him to lift the potatoes up to the kitchen premises. There is no evidence in the record which would compel us to hold, as a matter of law, that he submitted himself subject to the defendant in so far as the authoritative control of the details of his performance of acts was concerned. The circumstances did no more than raise an issue of fact, and this was found by the jury adversely to defendant's contention. Stephens v. Mendenhall, Tex. Civ.App. Fort Worth 1956, 287 S.W.2d 259, writ refused, n. r. e.; Insurors Indemnity & Insurance Co. v. Pridgen, 1949, 148 Tex. 219, 223 S.W.2d 217; Judson & Little v. Tucker, Tex.Civ.App. Fort Worth 1913, 156 S.W. 225, error refused; Grandstaff v. Mercer, Tex.Civ.App. Fort Worth 1948, 214 S.W.2d 133, writ refused, n. r. e.; Rankin v. Nash-Texas Co., Tex.Com.App. 1937, 129 Tex. 396, 105 S.W.2d 195.

Defendant contends that the trial court erred in overruling its motion to disregard the answer to Special Issue No. 6, because it could not, as a matter of law, be a proximate cause of plaintiff's injuries. Special Issue No. 5, upon which No. 6 was conditionally submitted, inquired of the jury whether its employee, Jackson, was negligent in instructing the plaintiff to "stomp and kick" the elevator. It is to be noted that no objection was made to the charge of the court upon Special Issue No. 6 predicated upon such a ground, and that it was first advanced after verdict.

■■■ Without present consideration of whether Special Issue No. 6, and its companion issues upon which it was conditionally submitted, of itself presented the ultimate issue of an independent ground for plaintiff's recovery, it is certainly neces-

sarily referable to such issue or issues by which the unsubmitted ultimate issue determinative of the ground of recovery could have been submitted. As such, and since there is evidence to support a finding thereupon, they would be deemed as found by the trial court in such manner as to support the judgment as authorized by the provisions of Texas Rules of Civil Procedure 279. The issue submitted, and of course the controlling issues to which it would necessarily be referable if considered as other than such a controlling issue, would be issues upon which the plaintiff relied. As such, other language of T. R. C. P. 279 makes it plain that the failure to submit the controlling issue shall not warrant a reversal of the judgment unless in the objections to the charge of the court the adverse party points out the deficiency or error and objects because thereof. Furthermore, it is noted that defendant's motion to disregard the jury's answer to the issue does not come within the provisions of T. R. C. P. 301, since the motion is not predicated upon any want of evidence to support the jury's answer. Therefore, we do not need to resolve the question raised by defendant, for it must be answered contrary to its contention even if Special Issue No. 6, of itself, did not present a question, answer to which would establish a lawful proximate cause.

The point of error primarily emphasized by the defendant upon the appeal is a rather unique one. It is contended that the trial court erred in refusing to render judgment on the verdict for defendant because the jury found against plaintiff's contention on an essential fact finding necessary to his recovery. The question and answer to which the defendant refers read as follows:

"Do you find from a preponderance of the evidence that upon the occasion when the plaintiff Ferracci was injured that W. L. Jackson instructed Ferracci to go to the kitchen and enter the elevator that is involved in this suit? Answer 'yes' or 'no.' Answer: No."

Adverting to the pleadings of the plaintiff, it is noted in the general allegations the statement that Jackson requested and instructed the plaintiff to ascend the stairs to the kitchen, board the elevator and "stomp and kick" the same to aid him, the said Jackson, in dislodging the elevator and placing it back in operation; that plaintiff did as Jackson requested and did enter the elevator and "stomp" the same, etc. At other points in the general allegations similar statements were made, in each instance the words "enter and stomp", or synonymous words, being coupled. Thereafter, plaintiff alleged that certain acts and omissions of negligence on the part of Jackson (to be listed), either acting separately or concurrently, were each a proximate cause of the plaintiff's injuries and the damages therefrom resulting. Immediately following were many allegations of acts and omissions, the instructions relative to entering the elevator and the instructions to "stomp and kick" being separately listed.

In defendant's objections and exceptions to the court's charge, no complaint was made of the foregoing issue. However, objection was made because of the submission of the special issues presenting the question of whether Jackson was negligent in requesting and instructing the plaintiff to "kick and stomp" the elevator, the objection pointing out that plaintiff's contention, as disclosed by his evidence, was predicated upon "entering and stomping", etc., rather than upon "entering" separately and apart from "stomping", or rather than "stomping" separately and apart from "entering". The defendant contended that both acts were an element of one single act and that in view of the nature of the evidence should be included in one issue, wherefore the issues on "kicking and stomping" should be conditionally submitted upon the jury's affirmatively answering the issue above quoted. Since the latter issues were not so conditionally submitted, and since defendant theorizes that it would not be liable under the verdict under the circumstances unless the plaintiff obtained an affirmative answer to the special issue quoted, it would necessarily follow that the judgment should have been for the defendant. In the alternative, the defendant says that the state of the findings would not support a judgment for the plaintiff, should they be held not to require a judgment for the defendant.

Defendant refers us to evidence in the record wherein the plaintiff insisted that Jackson told him to "get in the elevator and stomp it", and where plaintiff testified that he would not have got into the elevator if Jackson had not told him to do so. From other evidence in the record, it is made plain that plaintiff could not have effectively "kicked and stomped" the elevator without having got inside it, due to the relative positions of the elevator floor and the floor level of the kitchen. We have heretofore described these positions. In their brief, the attorneys for the plaintiff have rather effectively pointed out that plaintiff's interpretation of the instructions given to him by Jackson reasonably and necessarily embraced the element of entry as well as the "stomping and kicking". These attorneys locate one instance appearing in the record where plaintiff testified as to what Jackson did or did not say the single answer, as follows: "'Well, no, he didn't tell me to get in the elevator, no.'" There were numerous instances where the plaintiff testified that he could not have "stomped" on the elevator without getting into the elevator cage.

■ Analyzing the attack made by the defendant, it seems to us that it adopts as its first premise the proposition that plaintiff became bound, in view of the nature of his pleadings, to prove that Jackson negligently instructed him to "enter" the elevator and negligently instructed him to "stomp" on the elevator after he made the entry. We believe a fair construction of such pleadings to warrant the conclusion that plaintiff did not confine himself to the obligation to prove both facts, with negligence

and proximate cause predicated thereupon, for the reason that plaintiff disjunctively pleaded that said acts "either acting separately or concurrently" proximately resulted in the injuries, if not for additional reasons. 45 C.J., p. 1129, "Negligence", sec. 712, sub. (b), "Where Acts Alleged Conjunctively", and cases cited in notes; 65 C.J.S., Negligence, § 200, subd. b, p. 938, "Acts or Omissions Constituting Negligence", and cases cited in notes; 30–B Tex.Jur., p. 370, "Negligence", sec. 138, "Averment of Two or More Acts or Omissions", and cases cited in notes.

██ ██ Further analyzing defendant's attack, its second premise proceeds upon the theory that if defendant be in error as to its first premise, then plaintiff was nevertheless bound, under the circumstances of the evidence, to prove both that Jackson negligently instructed him to "enter" the elevator and negligently instructed him to "stomp" on the elevator after he made the entry, because they would necessarily be interdependent and/or that they must have conjunctively concurred in order for plaintiff's injuries to have proximately resulted. We do not believe this premise to be sound. Where two or more causes produce an injury and each is an efficient cause without which the injury would not have been sustained, the injury may be attributed to any or all of the causes, and judgment for damages predicated thereupon. Under defendant's theory we would be obliged to reverse many automobile negligence judgments on appeal where the jury refused to convict a defendant motor vehicle operator of having negligently failed to keep a proper lookout but nevertheless convicted him of having negligently failed to apply brakes or to turn his vehicle in time to avoid the collision causing the injury, whenever the evidence in the cold record rather plainly indicates that but for some deficiency in such operator's lookout he would, in all reasonable probability, not have committed the act of negligence of which the jury did convict him. The case at bar poses a situation even more favorable to the sustaining of the judgment for the plaintiff, for it seems plain that not only was it unnecessary that the jury couple with the act, negligence and proximate cause it did find the further finding of negligence in connection with the alleged instruction that plaintiff enter the elevator cage, it was not even necessary that the jury find the fact upon which such a finding of negligence would necessarily be predicated. Considered as conduct, Jackson's instructions are subject to separate consideration in respect to the direction of appellee to enter the elevator and the direction that he "stomp" on its floor. The acts would not be interdependent and it would not be necessary that plaintiff show a concurrence in order to support his judgment. It is to be remembered that one other person had entered the elevator cage before the plaintiff entered and that no harm came to him. Nor did any harm come to plaintiff for quite a period of time (at least five minutes) after he had made a like entry. 65 C.J.S., Negligence, § 110, Concurrent Causes, p. 674, et seq.; 30–B Tex.Jur., p. 488, et seq., "Negligence", "Findings", sec. 185, "Generally", and p. 490, sec. 186, "Issues under Legal Theories"; Galveston, H. & S. A Ry. Co. v. Patillo, 1907, 45 Tex.Civ.App. 572, 101 S.W. 492, error refused.

The judgment is affirmed.