**ANTHONY D. COX, Appellant**

**v.**

**YOKO ONO COX**

No. 71-2090

United States Court of Appeals

Third Circuit

Argued January 24, 1972

Decided March 30, 1972

WILLIAM W. BAILEY, ESQ. (BAILEY, WOOD & ROSENBERG), Charlotte Amalie, St. Thomas, V.I., *for appellant*

ROGER L. CAMPBELL, ESQ. (LOUD, CAMPBELL & DENNEN-BERG), St. Thomas, V.I., *for appellee*

Before SEITZ, *Chief Judge*, ALDISERT and GIBBONS, *Circuit Judges*

OPINION OF THE COURT

GIBBONS, *Circuit Judge*

This is an appeal from an order awarding to Yoko Ono Cox Lennon legal custody of her daughter, Kyoko, subject to the right of reasonable visitation with Anthony D. Cox, the child's father.

545

On January 15, 1969 Anthony D. Cox commenced in the District Court of the Virgin Islands an action for a decree of absolute divorce in which he prayed for custody of Kyoko, with reasonable rights of visitation for the mother. The parties had been married in Tokyo, Japan in 1963, and Kyoko, the one child of the marriage, was then five years of age. Mr. Cox alleged that he was a resident of the Virgin Islands for more than six weeks prior to the commencement of the action and that Yoko Ono Cox was then a resident of London, England. The court ordered service of process in the divorce action by publication. Yoko Ono Cox filed a verified answer in which she admitted that a state of incompatibility of temperament existed between the parties, and in which she stated:

"2. Offers no objections to the immediate hearing of the application of the plaintiff for a decree of divorce absolute, without further notice to defendant; and to the making and entry of such findings of fact, conclusions of law, and decree as to the Court may seem just and proper in the premises, *except that the defendant refuses to give exclusive custody of the child to the plaintiff.*" (emphasis supplied)

The italicized language in the answer was added by Yoko Ono Cox in her own handwriting. She also filed a voluntary notice of appearance, waiver and consent in which she consented to the hearing of the cause as if by default. See 5 V.I.C. § 115. The answer and the voluntary appearance were verified on January 15, 1969, the same date on which the complaint was filed. Mr. Cox moved that the case be scheduled as an uncontested divorce hearing on January 27, 1969. He testified at this hearing, and the court made the following findings of fact, conclusions of law and decree:

"FINDINGS OF FACT:

That the plaintiff is an inhabitant of the Virgin Islands who was domiciled therein at the commencement of this action, and who has resided therein at least six (6) weeks prior thereto; that the

parties were married on June 11, 1963 in Tokyo, Japan, and there is one child of this marriage, namely: Kyoko, 5 years old; and that a state of incompatibility of temperament exists between the parties.

CONCLUSIONS OF LAW:

That I conclude as a matter of law, that a state of incompatibility of temperament exists between the parties, which entitles the plaintiff to a Decree of Divorce Absolute.

\* \* \*

ORDERED, ADJUDGED AND DECREED:

1. That the Plaintiff be and he hereby is granted a Decree of Divorce Absolute, dissolving forever the bond of matrimony heretofore existing between the parties and entered into on the 11th day of June, 1963;

2. That the questions of the care, custody, and control of the minor child, Kyoko, shall be left open for the future determination of a court of competent jurisdiction."

The District Court of the Virgin Islands had subject matter jurisdiction, in the divorce action, to "further decree— (1) for the future care and custody of minor children of the marriage as it may deem just and proper. . . ." 16 V.I.C. § 109. It is clear, however, that the district court in 1969 expressly refrained from making any decree respecting Kyoko's custody. Undoubtedly this was done because in the verified answer Yoko Ono Cox contested the custody issue and the court concluded that, although it had jurisdiction, it would not dispose of that issue in a default proceeding. A fair construction of the decree, therefore, is that it granted an uncontested divorce but dismissed without prejudice Mr. Cox's prayer for a custody decree.

On June 9, 1971 Yoko Ono Cox Lennon (formerly Yoko Ono Cox) filed in the District Court of the Virgin Islands a motion for custody of Kyoko. The motion is captioned in the original divorce proceeding. It alleges that Mrs. Lennon is a permanent resident of England, and that

Kyoko and her father with whom she is living are residents of Spain. Mrs. Lennon also filed a motion that the court enter an order pursuant to 5 V.I.C. § 112 for substituted service by publication of a notice of hearing on her motion for custody. In support of that motion the attorney for Mrs. Lennon filed his affidavit in which he discloses that Anthony Cox and Kyoko had left Spain and were somewhere in the United States, whereabouts otherwise unknown. On June 18, 1971 the District Court ordered:

"that service of Notice of Hearing on Motion for Custody of Minor Child of Yoko Ono Lennon (formerly Yoko Ono Cox) may be made upon Anthony D. Cox by publication of Notice of Hearing in a newspaper of general circulation in the Virgin Islands for four (4) consecutive weeks, together with service of such Notice of Hearing upon counsel of record for Anthony D. Cox, namely, Bailey, Wood & Rosenberg, Professional Building, St. Thomas, Virgin Islands."

The notice of a hearing, to be held on July 26, 1971, was duly published in "The Daily News," St. Thomas. An affidavit of service also discloses that the notice was served on Bailey, Wood & Rosenberg, was mailed to the last known address of Anthony Cox in Spain, was mailed to Mr. Cox care of his brother in New York (returned marked "Moved Left No Address"), care of his father in New York (returned marked "Unclaimed") and to Sewell, Junell & Riggs, attorneys in Houston, Texas, believed to be counsel for Cox.

On July 23, 1971 Bailey, Wood & Rosenberg filed a motion to dismiss. This pleading alleges:

"COMES NOW, Anthony D. Cox, formerly the plaintiff in this action, and appearing specially in this matter by his attorneys BAILEY, WOOD & ROSENBERG, ESQS., for the purpose solely of moving to dismiss the alleged MOTION FOR CUSTODY OF MINOR CHILD, date of June 11, 1971, and does so appear specially and move to dismiss said alleged Motion pursuant to Rule 12(b) F.R.C.P. for all the reasons and defences (sic) stated in said Rule 12(b)."

To this pleading was attached a copy of a petition by Anthony Cox to the Court of Domestic Relations, Harris County, Texas, filed July 1, 1971 which alleges that Cox and Kyoko are residents of that county and which seeks a decree of custody. At the hearing on July 27, 1971 Mr. Bailey of Bailey, Wood & Rosenberg appeared and continued to object to the jurisdiction of the district court. The court nevertheless heard the testimony of Mrs. Lennon and another witness. This testimony disclosed that Anthony D. Cox and Kyoko were now residents of Harris County, Texas, and that the parties had recently been involved in litigation in a criminal court in Spain over Mr. Cox's de facto custody of the child and Mrs. Lennon's efforts at self help.

The district court concluded that it had continuing jurisdiction over the subject matter of Kyoko's custody and over the person of Mr. Cox by virtue of 16 V.I.C. § 110 which provides:

> "At any time after a judgment is given the court, upon the motion of either party on notice, may set aside, alter or modify so much of the judgment [of divorce] as may provide alimony or, . . . for the care and custody of the minor children. . . ."

It also rejected Mr. Cox's alternative position that it should as a matter of comity defer to the Texas court which concededly had at least concurrent jurisdiction. See Bergen v. Bergen, 439 F.2d 1008 (3d Cir. 1971). On July 30, 1971 the district court entered an order directing Mr. Cox to appear in St. Thomas on September 16, 1971 to show cause why custody should not be awarded to Mrs. Lennon. This order to show cause was served on Bailey, Wood & Rosenberg, and mailed to Sewell, Junell & Riggs, the Houston, Texas attorneys who represented Cox in the Texas custody case.

On August 30, 1971 Mr. Cox filed a notice of appeal from the July 30, 1971 order.

On September 16, 1971 Mr. Bailey informed the court that Mr. Cox would not appear. He advised the court of the notice of appeal and of the fact that Mrs. Lennon had appeared in the Texas proceeding. He then withdrew, and it is clear that he continued to assert Cox's jurisdictional objection. The district court noted that the July 30, 1971 order probably was interlocutory and not appealable, and that in any event no stay had been requested. Fed. R. App. P. 8. The court then heard further testimony from Mrs. Lennon and received in evidence a copy of her answer filed in the Texas proceeding. That answer (Exhibit B in evidence) does not contest the jurisdiction of the Texas court, but does suggest that the Texas court defer to the jurisdiction being asserted by the Virgin Islands Court. On September 24, 1971 the district court filed an opinion, in which it found that Kyoko's custody should be awarded to Mrs. Lennon, and entered an Order as follows:

"IT IS ORDERED, that the paragraph numbered "2" of the Decree entered herein on January 30, 1969, be and the same is hereby amended to read as follows:

That Yoko Ono Lennon (formerly Cox) be, and she is hereby awarded the legal custody of Kyoko Cox, the child of the parties herein, SUBJECT, NEVERTHELESS, to the right of reasonable visitation of plaintiff, Anthony D. Cox, which right shall include, the right to have the child with him during Summer vacation from school in alternate years, the right to have the child with him for the Christmas recess from school every other year, provided, however, that he shall not, as of right have the child during the Summer and for Christmas in the same year, and also to have such other and additional visitation with the child, upon reasonable notice, as may be mutually agreeable to the parties.

FURTHER ORDERED, that in all other respects, the aforementioned Decree entered in this cause on January 30, 1969, shall remain in full force and effect."

This appeal followed. Mr. Cox contends (1) that the District Court of the Virgin Islands lacked subject matter ju-

risdiction, (2) that that court lacked in personam jurisdiction over him, (3) that assuming jurisdiction the notice resorted to violated due process, and (4) that assuming jurisdiction the court should have deferred to the concurrent jurisdiction of the Texas court.

It is clear that if the instant proceedings were to be considered as an original custody action the District Court of the Virgin Islands would lack subject matter jurisdiction. Such an action could only be brought in the Municipal Court of the Virgin Islands pursuant to 4 V.I.C. § 172(3), and then only if the child was a Virgin Islands resident. Perrin v. Perrin, 408 F.2d 107, 111 (3d Cir. 1969); Cf. Application of Reed, 447 F.2d 814 (3d Cir. 1971). It is also clear that 5 V.I.C. § 112, would not authorize substituted service either in the district court or in the municipal court in an original action against a non-resident parent for custody of a non-resident child. Nor would 5 V.I.C. § 501, et seq., the Virgin Islands equivalent of the Uniform Interstate and International Procedure Act, authorize the courts of the Virgin Islands to exercise personal jurisdiction over a non-resident parent in an original action for custody of a non-resident child. Jurisdiction over both the subject matter and the person of Mr. Cox depend entirely upon the power of the district court to modify the 1969 divorce decree pursuant to 16 V.I.C. § 110.

In deciding that 16 V.I.C. § 110 was a sufficient jurisdictional basis the district court relied on our interpretation of § 110 in Bergen v. Bergen, supra. In that case, unlike this, the original divorce decree contained a provision awarding custody of the child to the mother. Moreover in Bergen, unlike this case, the mother and the child continued to be Virgin Islands domiciliaries. Bergen recognized that in these circumstances the district court had continuing jurisdiction to enforce the custody provision. The case involved an application for a contempt order. It

was neither an original custody action nor an application to modify a custody order issued incident to a divorce decree. Thus it was in no sense a definitive interpretation for this case of 16 V.I.C. § 110.

We did note in Bergen, however, that Restatement (Second) of Conflict of Laws § 26 (1969) supported the conclusion that the alleged contemnor remained subject to the jurisdiction of the District Court. Section 26 provides:

> "If a state obtains judicial jurisdiction over a party to an action, the jurisdiction continues throughout all subsequent proceedings which arise out of the original cause of action. Reasonable notice and reasonable opportunity to be heard must be given to the party at each new step of the proceeding."

In cases in which the original decree made provision for the payment of alimony we have held that 16 V.I.C. § 110 authorized the court to proceed, on a motion in the original proceeding, to modify the alimony award. Viles v. Viles, 316 F.2d 31 (3d Cir. 1963); Crawford v. Crawford, 254 F.2d 113 (3d Cir. 1958). In Crawford such an application was entertained in a case, such as this, in which neither party was any longer a Virgin Islands resident. Crawford is authority, therefore, for the proposition that the power granted in § 110 to modify a decree is not affected by the fact that neither of the parties are any longer Virgin Islands inhabitants. See 16 V.I.C. § 106. Thus we may assume that if the original decree, properly construed, made provision for the care and custody of Kyoko Mr. Cox would remain subject to the in personam jurisdiction of the district court to modify that provision, subject only to reasonable notice and an opportunity to be heard, even though neither he nor his former wife nor their child still resided in the Virgin Islands.

But as we pointed out above, the original decree here expressly refrained from making any disposition respect-

ing custody. Nor did it provide for the retention of jurisdiction for any purpose. Thus we are faced with the narrow issue whether, when a statute authorizes a divorce court to amend provisions of a decree concerning custody of a child, but the court has made no such provision, it can in the guise of an amendment make an original custody order.

The question has arisen elsewhere.[1] In Arizona,[2] Mississippi[3] and New York,[4] it has been held that if there is no order concerning custody of the children there is nothing that can be amended. In the District of Columbia,[5] Kansas,[6] Kentucky,[7] Maine,[8] Michigan,[9] Missouri,[10] Oklahoma,[11] Tennessee[12] and Washington,[13] it has been held that the divorce court may, when a statute permits amendment, amend a divorce decree that is silent on the subject of custody and maintenance.[14]

Elkins v. Elkins, supra, is an example of the cases recognizing continuing jurisdiction. The governing statute in Elkins provided:

---

[1] See Annot., 71 A.L.R.2d 1370, 1388 (1960).

[2] Stanley v. McKenzie, 29 Ariz. 288, 240 P. 1033 (1925).

[3] Schneider v. Schneider, 155 Miss. 621, 25 So. 91 (1929); Montgomery v. Walker, 227 Miss. 552, 86 So. 2d 502 (1956).

[4] Salomon v. Salomon, 101 App. Div. 580, 92 N.Y.S. 184 (1905); White v. White, 154 App. Div. 250, 138 N.Y.S. 1082 (1912). The New York statute upon which these cases turned has been changed to expressly authorize divorce courts to make such orders after judgment. See 71 A.L.R.2d at 1388.

[5] Elkins v. Elkins, 55 U.S. App. D.C. 9, 299 F. 690 (D.C. Cir. 1924); Trotter v. Trotter, 87 U.S. App. D.C. 213, 183 F.2d 997 (1950).

[6] Rowell v. Rowell, 97 Kan. 16, 154 P.243 (1916); Efland v. Efland, 171 Kan. 657, 237 P.2d 380 (1951).

[7] Evans v. Evans, 232 Ky. 155, 22 S.W.2d 578 (1929).

[8] Harvey v. Lane, 66 Me. 536 (1876).

[9] Havens v. Havens-Anthony, 335 Mich. 445, 56 N.W.2d 346 (1953).

[10] Shannon v. Shannon, 97 Mo. App. 119, 71 S.W. 104 (1902).

[11] Thompson v. Thompson, 347 P.2d 799 (Okla. 1959).

[12] Coleman v. Coleman, 190 Tenn. 286, 299 S.W.2d 341 (1950); Roble v. Roble, 41 Tenn. App. 412, 295 S.W.2d 817 (1956).

[13] State ex rel. Ranken v. Superior Court of King County, 6 Wash. 2d 90, 106 P.2d 1082 (1940).

[14] See generally Annot., 71 A.L.R.2d 1370 (1960).

"After a decree of divorce in any case granting alimony and providing for the care and custody of children, the case shall still be considered open for any future orders in those respects."

In a decree of absolute divorce the court awarded custody but was silent as to child support and alimony. The court held that the defendant remained subject to the jurisdiction of the court for purposes of a child support order and was entitled only to reasonable notice.

 Trotter v. Trotter, supra, involved the same District of Columbia statute. The original decree was silent as to both custody and support. Seven years later the divorce court entertained by motion, and granted an application for custody and support. The court of appeals affirmed. The District of Columbia statute is quite similar to 16 V.I.C. § 110, and while the split in authorities indicates that reasonable men may differ on the point we think the statutory construction which recognizes the divorce court's ongoing in personam jurisdiction is the more reasonable.

 The effect of this construction is to subject parties to a Virgin Islands divorce decree to continuing in personam jurisdiction there, even though both have long since left the jurisdiction, for alimony claims so long as the former spouse lives and for child custody or child support claims so long as a child of the marriage remains an infant. Recognizing that in the past[15] the Virgin Islands was a hospitable climate for transient divorce actions as well as for winter sojourns, we realize that this construction will in some instances impose burdens upon non-resident respondents to such motions. On the other hand the plight of the former spouse seeking to obtain jurisdiction for purposes of a child custody proceeding over a nomad is

---

[15] See Granville-Smith v. Granville-Smith, 349 U.S. 1, 11–16 (1955).

illuminated in the record before us.[16] That plight demonstrates the wisdom of a rule of law that affords continuing in personam jurisdiction in the original divorce court as a sort of home base to which, for purposes of child custody, child support and alimony, the parties may on reasonable notice be required to resort.

■ Thus we hold that under 16 V.I.C. § 110 the district court had in personam jurisdiction over Mr. Cox for the purpose of the custody decree by virtue of the fact that he was a party to the 1969 divorce action.

■■ The manner of notice to a non-resident party, over whom the divorce court had in personam jurisdiction, of a motion for modification of the divorce decree with respect to alimony, custody, or child support is in some jurisdictions covered by statute. In the absence of statute any manner of reasonable notice has been held to be suffi-

---

[16] The record discloses that following the 1969 divorce decree Mr. Cox had possession of Kyoko, residing in Spring Valley, Idaho, but that the parties had an understanding that both parties would take care of her. In the Spring of 1969 Mr. Cox left the child with Mrs. Lennon in England for a time. Thereafter Mr. Cox asked for the child for a temporary visit. He took Kyoko out of England, probably to Canada. Mrs. Lennon eventually located them in Voorst, Denmark and went there in an unsuccessful effort to have the child returned to England. While she was in Voorst, Mr. Cox moved Kyoko, so that Mrs. Lennon was unable to visit her. Mr. Cox agreed to a visit in London provided Mrs. Lennon pay transportation for the child, Mr. Cox and his girlfriend. Thereafter Mr. Cox took the child to Hawaii and Mrs. Lennon, when she learned of this location, went there. Mr. Cox permitted a one day visit on this occasion. Thereafter at Mrs. Lennon's expense Mr. Cox, the child and the new Mrs. Cox travelled from Hawaii to Los Angeles where Mr. Cox permitted a four day visit. Next he travelled to San Francisco, but by the time Mrs. Lennon learned of his San Francisco location he had left for New York. He would not permit visitation in New York. From New York he went to Montreal, and from Montreal to Voorst. From Voorst he went to the Spanish Island of Ibiza where he stayed about three months. When Mrs. Lennon learned he was in Ibiza, he went to Majorca. She eventually found out about this location and went there. She found Mr. Cox living in a Makarashi Center and the child living with the new Mrs. Cox, from whom he had separated. Mr. Cox permitted a one day visit. When Mrs. Lennon and her husband attempted a more prolonged visit by self help, Mr. Cox charged them with abduction. These charges were eventually dismissed. Mrs. Lennon later heard a rumor that the child was in New York. She tried to obtain relief in New York by a habeas corpus proceeding but succeeded only in learning that Kyoko was not in that state. Thereafter she commenced the instant proceeding.

cient.[17] The Virgin Islands statute merely provides for a motion "on notice." 16 V.I.C. § 110. That language must be construed in light of the Restatement (Second) of Conflict of Laws § 25:

> "A state may not exercise judicial jurisdiction over a person, although he is subject to its judicial jurisdiction, unless a reasonable method is employed to give him notice of the action and unless he is afforded a reasonable opportunity to be heard."

If the method of notice employed does not meet due process standards the fact that, as here, the party received actual notice may be irrelevant. See Restatement (Second) of Conflict of Laws § 25 Comment f; Wuchter v. Pizzutti, 276 U.S. 13 (1928). But cf. National Equipment Rental Ltd. v. Szukhent, 375 U.S. 311, 315 (1964). Here notice was served upon the attorney of record in the original divorce case. The jurisdictions which have considered whether such an attorney has continuing implied authority to receive notice of an application to modify a divorce decree as to child custody have split on the issue.[18] Florida,[19] Illinois,[20] Kansas,[21] Missouri,[22] and Rhode Island[23] have refused to recognize such authority. California,[24] Missouri,[25] Nevada,[26] Texas[27] and Washington[28] have held such notice to be adequate.

[17] See generally, Annot., 62 A.L.R.2d 544 (1958).
[18] See generally, Annot., 42 A.L.R.2d 1115 (1955).
[19] Moore v. Lee, 72 So.2d 280 (Fla. 1954).
[20] Cummer v. Cummer, 283 Ill. App. 220 (1935).
[21] Smith v. Smith, 171 Kan. 619, 237 P.2d 213 (1951).
[22] Fernbaugh v. Clark, 236 Mo. App. 1200, 163 S.W.2d 999 (1942); Burgess v. Burgess, 239 Mo. App. 390, 190 S.W.2d 282 (1945).
[23] Damm v. Damm, 77 R.I. 24, 72 A.2d 839 (1950).
[24] Moore v. Superior Court, 203 Cal. 238, 263 P. 1009 (1928); Benway v. Benway, 69 Cal. App.2d 574, 159 P.2d 682 (1945).
[25] State ex rel. Shoemaker v. Hall, 257 S.W. 1047 (Mo. 1923), distinguished in Fernbaugh v. Clark, 236 Mo. App. 1200, 163 S.W.2d 999 (1942).
[26] State ex rel. Groves v. First Judicial Dist. Court, 61 Nev. 269, 125 P.2d 723 (1942).
[27] Kentz v. Kentz, 209 S.W. 200 (Tex. Civ. App. 1919).
[28] State ex rel. Jones v. Superior Court, 78 Wash. 372, 139 P. 42 (1914); State ex rel. Meins v. Superior Court, 159 Wash. 277, 292 P. 1011 (1930).

■ A simplistic approach would be to let the jurisdiction issue control the implied authority issue and hold that since the court has in personam jurisdiction over the party the attorney of record must be assumed in every case and at all times to have authority to receive notice of any motion. This approach may be inappropriate, we think, for notice of application for modification of decrees involving custody, child support or alimony which may take place years after the original action, when the attorney of record may not even be alive, or if available, may have no knowledge of the location of his former client. Where, however that attorney is still available and does in fact have knowledge of the location of his former client, notice to him does in our view meet due process requirements. And the best evidence that he had such knowledge is the fact of actual notice.

■ Here there were other attempts at notice. One such was a mailing to Mr. Cox's last known address in Spain. Another was a service upon his attorney in Texas. Another was by publication in a Virgin Islands newspaper. We do not know which of the several methods of notice was ultimately successful. One or more was. Taken together they were reasonably calculated to bring the application to Mr. Cox's attention and afford him an opportunity to be heard. In these circumstances we need not fashion a rule on notice more specific than that of the Restatement (Second) of Conflict of Laws § 25. We hold that one or more reasonable methods of giving notice were employed here.

Finally, there remains Mr. Cox's contention that the district court should have deferred to the jurisdiction of the Texas court. Our review of the record and of the court's findings convinces us that it exercised its discretion in this regard after carefully balancing the competing considerations set forth in Bergen v. Bergen, supra. The exercise of

discretion in favor of affording a Virgin Islands forum for adjudication of the custody issue was indeed prophetic, since we have been informed by means of an affidavit in support of a motion to supplement the record, that the nomadic Mr. Cox, before the Texas court acted finally, once more removed Kyoko, from that State to Japan. We note from the motion papers that he is now in contempt of the Texas court.

The appellee's motion to supplement the record will be granted. The order of the District Court of the Virgin Islands amending the decree will be affirmed.