**AMOS BRANDY, Plaintiff**

v.

**MELVINA BRANDY, Defendant**

Family No. D46/79

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

February 27, 1985

DESMOND L. MAYNARD, ESQ., St. Thomas, V.I., *for plaintiff*

NAN BLUMENFELD, ESQ. (Law Offices of FREDERICK G. WATTS), Charlotte Amalie, St. Thomas, V.I., *for defendant*

FEUERZEIG, *Judge*

## MEMORANDUM OPINION

The court is required to determine whether the defendant, who was divorced on May 23, 1979 after substituted service and the entry of a default, may now assert a claim for alimony.

### I.

Plaintiff, Amos Brandy, on February 13, 1979 filed a complaint and requested substituted service on the defendant, Melvina Brandy. The summons and complaint were served on March 2, 1979 by registered mail, return receipt requested, in Nevis, British West Indies. A default for failure of Mrs. Brandy to answer, appear or file a responsive pleading was entered on April 20, 1979, and at a hearing conducted on May 2, 1979 a divorce was granted. The decree dissolving the marriage was signed May 23, 1979.

By letter dated November 13, 1979, Simeon Daniel, a solicitor of the West Indies, wrote the court stating:

> I am Solicitor for Melvina Brandy.
> Sometime earlier this year the above Captioned Divorce Suit was heard at your court.
> Please send me a copy of the Order and the costs of same.

A decree was sent to Mr. Daniel on November 23, 1979.

No further action is noted until February 20, 1983, when Mrs. Brandy wrote the District Court of the Virgin Islands, which letter was forwarded to this court. Further correspondence between the

court and Mrs. Brandy took place, and as a result of allegations she made as to the procurement of the divorce and her financial status, the court on September 7, 1983 appointed counsel to investigate Mrs. Brandy's allegations and take appropriate action.

Counsel for Melvina Brandy on February 7, 1984 filed a motion to modify the divorce decree to include an award of alimony. Service of the motion on Amos Brandy was not perfected until April 17, 1984. Mr. Brandy retained new counsel and on June 5, 1984 filed his opposition. An evidentiary hearing was conducted on June 14, 1984, after which the court requested supplemental briefs from both sides, which now have been submitted.

## II.

The motion and opposition raise the following issues:

(1) May the court under Virgin Islands law, 16 V.I.C. § 110 (1964), modify the decree of May 23, 1979 and award Mrs. Brandy alimony?

(2) Was substituted service on Mrs. Brandy and her failure to answer or appear a waiver of any claim for alimony?

(3) Assuming no waiver, is Mrs. Brandy barred from seeking alimony because of laches?

(4) Assuming that the court under 16 V.I.C. § 110 may not modify the decree, that Mrs. Brandy has not waived alimony and that she is not barred by laches, may Mrs. Brandy assert a claim for alimony in this action?

The court concludes that it does not have the power to modify the decree under 16 V.I.C. § 110, but that substituted service and Mrs. Brandy's failure to seek alimony do not constitute a bar or a waiver of a claim for alimony. The court also holds that Mrs. Brandy is not barred by laches from asserting an alimony claim. Finally, in the interest of judicial economy the court holds that Mrs. Brandy may assert her alimony claim in this action.

## III.

Mrs. Brandy bases her motion to modify on 16 V.I.C. § 110 (1964), which authorizes this court to modify an existing award of spousal support.[1] No Virgin Islands decision, though, can be found that

---

[1] Title 16 V.I.C. § 110 provides in pertinent part:
 At any time after a judgment is given the court may . . . set aside, alter or modify so much of the judgment as may provide for alimony . . . or the maintenance of either party in this action.

holds that section 110 allows the court to order payment of support where, as here, the original divorce decree is silent on that subject.[2]

■ Courts construing similar statutes in other jurisdictions consistently have held that if the original divorce decree makes no provision for spousal support, none may be added at a later date. See, e.g., Thomason v. Thomason, 302 S.E.2d 63, 65 (Va. 1983); In the Matter of Park and Park, 602 P.2d 1123, 1124 (Or. Ct. App. 1979); Graber v. Graber, 523 P.2d 1353, 1357 (N.M. 1974); and Rodman v. Rodman, 492 P.2d 897, 898–99 (Colo. Ct. App. 1972). This rule, in the absence of a local statute, applies in the Virgin Islands. 1 V.I.C. § 4 (1967).[3] Therefore, the court has no jurisdiction under section 110 to modify the divorce decree to provide for alimony.

## IV.

The court's inability to modify, though, does not necessarily preclude Mrs. Brandy from an award of alimony. While she has styled her motion as one to modify, Mrs. Brandy also contends the court still has authority to grant her an original award of alimony. The court agrees.

## A.

■ As stated, Mrs. Brandy was served with notice of the divorce action by registered mail, return receipt requested. She was never personally served, nor did she appear or file an answer before the divorce was granted. Service by registered mail, though, does satisfy the requirements of procedural due process so as to empower this court to terminate a marriage. Estin v. Estin, 334 U.S. 541, 544 (1948); Williams v. Williams, 317 U.S. 287 (1942). Accordingly, the

---

[2] Mrs. Brandy relies on Cox v. Cox, 8 V.I. 543, 457 F.2d 1190 (3d Cir. 1972), for the proposition that the court retains jurisdiction over the issues of alimony, custody, and support even when the divorce decree is silent on these issues. This reliance is misplaced. Disregarding the jurisdictional underpinnings required for a grant of custody as opposed to alimony, Cox considered custody of a minor, an issue that the divorce decree specifically left open for future determination. Because the Cox decree was not silent on the issue, section 110 clearly empowered the court to modify the award of custody. Here, however, the decree does not mention support or alimony. Consequently, Cox is not authority for saying that section 110 permits the court to modify what does not exist.

[3] Title 1 V.I.C. § 4 (1967) provides:
The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

court was empowered to grant Mr. Brandy a valid divorce. Vanderbilt v. Vanderbilt, 354 U.S. 316 (1957); Estin v. Estin, supra.[4]

■ Service by registered mail in Nevis, however, did not give the court personal jurisdiction over Mrs. Brandy, as would personal service or an appearance. Id. Moreover, without personal jurisdiction, the court had no power to adjudicate Mrs. Brandy's property interest in alimony. Vanderbilt v. Vanderbilt, 354 U.S. at 418; Estin v. Estin, 334 U.S. at 548. Therefore, while the divorce terminated the marriage, it did not extinguish Mrs. Brandy's right to assert a claim for alimony.

There are several bases for jurisdiction to hear such a claim. First, the court has a statutory basis under the support of relations law, 16 V.I.C. § 342(a)(1) (1964), which provides in pertinent part:

> (a) The following are obliged to support each other—
> (1) husband and wife

In deciding a similar case, the Supreme Court of California relied on a similar statute in finding jurisdiction. It declared:

> A wife's right to support arises from the marriage and is recognized by statute. Civ. Code, § 174. It is not created by a divorce decree . . . The [ex parte divorce] decree . . . did not and could not under the Vanderbilt decision, terminate [the wife's] right to alimony under the laws of this state.

Hudson v. Hudson, 344 P.2d 295, 299 (Cal. 1959). Similarly, while the Brandys' marital status was affected by the divorce, under Vanderbilt, supra, it could not terminate Mrs. Brandy's section 342(a)(1) property right to support. That right remains to be determined today.[5]

---

[4] Mrs. Brandy does not contest this court's jurisdiction to grant Mr. Brandy a divorce, nor does she contend that Williams and Estin are not controlling here. It has been suggested that Shaffer v. Heitner, 433 U.S. 186 (1977), raises·serious questions as to the vitality of Williams and Estin insofar as they hold that a court may grant an ex parte divorce without personal jurisdiction over an absent defendant based solely on the domicile of the plaintiff spouse. Hawkins, The Effect of Shaffer v. Heitner on the Jurisdictional Standard in Ex Parte Divorces 28 Fam. L.R. 311 (1984).

Here, even under "a minimum contacts" standard as postulated by Hawkins, there would be no basis for setting aside the divorce on jurisdictional grounds. At the evidentiary hearing it was established that Mrs. Brandy was a frequent visitor to the Virgin Islands after her husband relocated here in 1966, and that on many such occasions she stayed for extended periods of time.

[5] As Clark notes:
This result has troubled those who find it illogical to say that two people are at the same time married and not married, depending upon what court is deciding

■ Second, the court could consider a claim for support pursuant to its general equitable powers. See, e.g., Hopson v. Hopson, 221 F.2d 839 (D.C. Cir. 1955). Finally, this court is obliged to apply the common law as it is understood in the majority of American jurisdictions.[6] As noted by the court in Hudson, supra, of the 33 jurisdictions which at that time had considered this issue, 24 had found that a wife may obtain support or alimony following the entry of an ex parte divorce, Hudson v. Hudson, 344 P.2d at 297. Accordingly, Mrs. Brandy is entitled to file a claim for alimony or support.

## C.

The court also does not believe Mrs. Brandy can be said to have waived her right to support or alimony. Since the issue of alimony or support was not before the court and, absent personal jurisdiction, could not properly be before the court, Mrs. Brandy's right to assert such a claim was never litigated. Consequently, she need not have taken any action to preserve it. Cf. Vanderbilt v. Vanderbilt, supra.

■■ In addition, waiver is the intentional relinquishment of a known right. See, e.g., Fay v. Noia, 372 U.S. 391 (1962). Nothing was adduced at the evidentiary hearing to support the contention that Mrs. Brandy knew that if she did not assert her right to alimony, she would waive it. On the contrary, the facts found by the court cause it to conclude that Mrs. Brandy believed her husband could not obtain a valid divorce in the Virgin Islands. In fact, she believed that because they were married in Nevis and she still lived there that she could be divorced only in Nevis. Since she did not know that he could divorce her, she could scarcely be said to have known that the divorce could cut off her claim of alimony. Consequently, she cannot be said to have waived her right to alimony.[7]

---

the question and for what purpose. Yet there is nothing unusual about this. In the middle ages in England a woman, married by the standards of the ecclesiastical courts, could be denied dower if her marriage was contracted without certain formalities. She too was in a sense both married and not married. Logical inconsistency need not bother us if valid social policy is served.

H. Clark, The Law of Domestic Relations in the United States, 316 (1968).

[6] See n.3 supra.

[7] Mr. Brandy raises the additional defense of res judicata. Res judicata does not apply in these circumstances. Res judicata bars relitigation of an issue only where the issue has been fully litigated and a court of competent jurisdiction has entered a valid final judgment or decree. See, e.g., Del Peschio v. Del Peschio, 5 V.I. 461, 465, 356 F.2d 402, 404 (3d Cir. 1966), cert. den., 385 U.S. 886 (1966). Here, the court did not have jurisdiction to adjudicate the alimony issue, and it was never litigated.

## V.

Mr. Brandy also asserts that Mrs. Brandy is barred from receiving alimony by laches. Since divorce actions are equitable or quasi-equitable in nature, the equitable doctrine of laches could bar an award of alimony in this case. This issue is controlled by the Restatement of Restitution § 148 (1937); 1 V.I.C. § 4.[8] Section 148 provides:

> (1) In proceedings in equity, a person otherwise entitled to restitution is barred from recovery if he has failed to bring or, having brought has failed to prosecute, a suit for so long a time and under such circumstances that it would be inequitable to permit him now to prosecute the suit.

To determine whether a delay is so long as to be inequitable, the Restatement posits a two-part test. A delay is inequitable where (1) the party seeking restitution has been unreasonable in delaying after learning the facts, and (2) this delay poses a hardship to the opposing party because of changed circumstances or because there would be a substantial chance of reaching an erroneous decision as to the facts. Id. Comment a.

Mr. Brandy contends that Mrs. Brandy's failure to seek alimony until some three years and eight months after the decree was signed was unreasonable and that the delay now causes him great hardship because he has since remarried and started a new life. While there is some merit to Mr. Brandy's contention, the court does not consider either the delay so long or the hardship so great as to justify barring Mrs. Brandy's claim.

First, the Restatement recognizes the inability to secure proper advice and ignorance of one's rights as a justification for a delay in taking action. Id. Comment b. While there is evidence that Mrs. Brandy went to a lawyer in 1979, the court is satisfied that the advice she received was minimal and that because she could not afford to retain this lawyer, she did not pursue the matter. Second, Mrs. Brandy's letters, although not sworn to, are credible and attest to her ignorance of the law, as she also testified. In particular, the letters express her belief that it was impossible for her husband to divorce her except in Nevis. Thus, the court does not find that Mrs. Brandy's delay in taking action was so unreasonable as to bar her claim.

---

[8] See n.3 supra.

 Nor does the court believe Mrs. Brandy's claim will cause Mr. Brandy hardship. Mrs. Brandy only seeks prospective support. Therefore, Mr. Brandy, rather than suffering a hardship, may well have experienced a windfall in being relieved of what arguably was a duty to pay support from the time of the divorce in 1979 until the present. In addition, Mr. Brandy remarried on August 18, 1979. While the remarriage occurred before Mrs. Brandy even had actual knowledge of the divorce, the claim for alimony postdates the remarriage by several years. Therefore, the court cannot disregard Mr. Brandy's duty to support his present wife in determining the amount of any alimony award. Finally, any award that is made must be based on present needs and ability to pay. Consequently, the court does not find that the delay will unduly prejudice Mr. Brandy.

## VI.

While the court, therefore, will deny Mrs. Brandy's motion to modify pursuant to 16 V.I.C. § 110, it will entertain her claim for alimony. The court could require Mrs. Brandy to bring her claim as a new and separate action, but in view of this court's underlying jurisdiction and in the interest of judicial economy, it will not require her to do so.

 As the court noted earlier, Mrs. Brandy in her motion to modify argued that she could bring an original claim for alimony. Mr. Brandy had notice of this argument and responded to it fully in his reply brief. Moreover, the rules of procedure do not appear to require the filing of a new action. Cf. Fed. R. Civ. P. 1, 42 (rules are to be construed so as to avoid unnecessary costs and delay and to secure the just, speedy, and inexpensive determination of every action). Accordingly, the court will treat Mrs. Brandy's motion to modify as an original claim for alimony and determine the amount of alimony to be awarded, if any, as a part of the present action.